FARMER, J.
The topic of this decision is family member coverage in automobile insurance. We hold that if the objective of the insurer is not to cover an underage, unlicensed family member, the policy must state such an intention explicitly and plainly.
Young Christopher’s father[1] was an established customer of Federated, who for many years purchased insurance covering only his vehicle, which he renewed every November. On the application for the current policy, under the heading of Driver Information, the father was required to list all members of the household and warned:
“All persons H years or older, licensed or not, who are residents of the applicant’s household must be listed below whether or not they are operators of the vehicles listed. Failure to provide this information shall constitute a material misrepresentation, which shall result in all insurance coverages being void. This applies to students living away from home and persons in the Armed Services.” [e.s.]
Father dutifully listed himself, wife Kim, daughter Tatum and even unlicensed son Christopher because he was then 14. Next to the name of each person listed, the form required the driver’s license number. By his own name he wrote his license number, but next to his wife’s and daughter’s names he wrote excluded. Because his son did not yet have a license, next to his son’s name he wrote none. Notably he did not add the word excluded.
On account of Father’s desire to cover only himself and no other family member, Federated required him to execute a Named Driver Exclusion Election form. On that form he listed his wife and daughter — the only other licensed drivers in his household. Conspicuously, however, he did not include or add his underage and unlicensed son’s name on this Named Driver Exclusion Election form.[2]
Accompanying the policy issued by Federated was a Declarations Page, a pre-printed form containing specifications and information inserted onto the form electronically. On this Declarations Page, the form stated four names as operators of the insured vehicle, along with their birthdates and driver’s license numbers. This form also listed all members of father’s household — including the underage, unlicensed son and stated that wife and daughter were excluded. But — like the Named Driver Exclusion Election form — the son’s name was not excluded. The Declarations Page made clear that it, along with the “policy jacket” and any endorsements issued with it, are part of the policy.
Before stating the coverage limits, conditions and exclusions, the policy began with definitions, among which is this: “ ‘Family member’ [e.oj means a person related to you by blood, marriage or adoption who is a resident of your household ... provided said family member does not own a private, passenger auto.” Son Christopher did not own a private, passenger auto.
*457 As with typical automobile policies, there is an alphabet soup of coverages.[3] We are concerned only with liability coverage. Part A of the policy provided: “We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident.” [e.s.] Part A specifies that:
“ ‘Covered person’ ... means ... any Family Member [e.s.] for the ... use of any auto ... except for an auto which is owned by you or any family member ... which is not defined as your covered auto under the definition section of this policy.”
Part A also contained this specific exclusion from coverage: ‘We do not provide Liability Coverage ... for any person using a vehicle without a reasonable belief that the person is entitled to do so.” [e.s.] The term entitled is not defined anywhere in the policy papers.
Two days before Christmas, the son— then 15 years old and still unlicensed — was riding as a passenger with a friend in her auto. Knowing that he lacked even a learner’s permit, but feeling ill, she asked him to drive her auto. With the vehicle owner’s express approval and consent, therefore, Son drove his friend’s auto while she placed herself in the rear seat. Turning the vehicle into their destination parking lot, he struck a moped and seriously injured its passenger. The moped passenger eventually brought suit against both Father and Son, in which they raised the issue of coverage for the accident under this policy. The trial court found no coverage; then this appeal.
Insurance contracts are construed in accordance with the plain meaning of the language in the policy for which the parties bargained. Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla.2000). Insuring or coverage clauses are understood to achieve the maximum coverage coherent with the plain meaning of the words used. McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass’n, 758 So.2d 692, 695 (Fla. 4th DCA 1999) (coverage clauses are construed in the broadest possible manner to effect the greatest extent of coverage); Hudson v. Prudential Prop. & Cas. Ins. Co., 450 So.2d 565, 568 (Fla. 2d DCA 1984) (insurance coverage must be construed broadly and its exclusions narrowly); Nat’l Merchandise Co. v. United Serv. Auto. Ass’n, 400 So.2d 526, 532 (Fla. 1st DCA 1981) (terms in policy relating to coverage must be construed liberally in favor of insured); Valdes v. Smalley, 303 So.2d 342, 344 (Fla. 3d DCA 1974) (clause extending covérage to insured must be construed liberally in favor of insured). If there is more than one reasonable interpretation of policy language- — one affording coverage; one ruling out coverage — the policy is ambiguous and coverage is inferred. Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla.2000); see also State Farm Fire & Cas. Ins. Co. v. Deni Ass. of Fla. Inc., 678 So.2d 397, 401 (Fla. 4th DCA 1996) (ambiguity results when the insurer drafts an exclusion capable of being fairly and reasonably read both for and against coverage). And when an insurer fails to define a policy term having more than one meaning, the insurer cannot argue a narrow or restrictive interpretation of the coverage provided. State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So.2d 1072, 1076 (Fla.1998). To ascertain the meaning of policy text, courts should read the whole policy and attempt to give every provision the full meaning and import of its words. See Excelsior Ins. Co. v. Pomona Park Bar & *458 Package Store, 369 So.2d 938, 941 (Fla.1979) (noting that every provision in a contract should be given meaning and effect, with apparent inconsistencies reconciled if possible).
As we have seen, here the insuring clause grants coverage to all covered persons. The express definition of covered person in Part A includes any blood relative of the named insured who resides in the same household and who does not own a private auto. (“Covered person ... means ... any family member for the ... use of any auto_”)[4] Nothing limits family coverage to only those family members having a valid driver’s license.
Nothing anywhere in the policy states that Son is not covered. To the contrary, the application and Named Driver Exclusion Election forms suggest by necessary implication that Son was meant to be covered and not excluded. The Declarations Page plainly identifies only two family members who are excluded from coverage but — again—not Son. In a contract filled with tightly drawn, context-specific provisions, there is not a single word limiting the broad generality of covered person and family member relating to coverage of Son. In the papers used to make plain who is not being covered, other members of the family are clearly listed, and — -just as clearly — Son is omitted. We are simply unable to find a plain meaning in the entire text used by this insurer in any of the forms or policy that would take Son out of Part A’s insuring clause for coverage. The only reasonable reading of the policy’s insuring clause is that Son is covered while driving his ill friend’s auto.
As indicated above, however, Part A does have an exclusion, one emphatically asserted by the insurer to take Son out of any liability coverage. To repeat, Exclusion 9 says “We do not provide Liability Coverage ... for any person using a vehicle without a reasonable belief that the person is entitled to do so.” [e.s.] The insurer argues that the term entitled means the legal authority to drive a vehicle on Florida roads — in other words, a valid driver’s license. The term entitled was meant to be modified by the unwritten word legally, the insurer argues, so that under its intended meaning Son is excluded from the coverage otherwise granted by Part A.[5]
The thing defeating the insurer’s argument — that entitled refers to legal authority to drive an auto — is the text and sentence structure of the exclusion. The sentence says that the exclusion applies to a person using a vehicle without a reasonable belief that he is entitled to do so. But driver’s licensure law does not forbid using a vehicle without an entitlement; instead it forbids driving any vehicle on the highway without a valid license. See § 322.03(1) Fla. Stat. (2006) (“a person may not drive any [e.s.] motor vehicle upon a highway in this state unless such person has a valid driver’s license”).
Obviously a person may use a vehicle without himself actually driving it. He could, for example, by agreement with its owner employ the auto to transport himself and others, while another person — a licensed driver — does the driving. As the court facing the same circumstances and argument explained in American Fire & Casualty Co. v. Blanton, 182 So.2d 36 (Fla. 1st DCA 1966):
“The clause says nothing about operation of the vehicle.... We think that in *459 this context the words use and operation are not synonymous. The use of an automobile denotes its employment for some purpose of the user; the word ‘operation ’ denotes the manipulation of the car’s controls in order to propel it as a vehicle. Use is thus broader than operation. ... One who operates a car uses it ... but one can use a car without operating it.” [c.o.]
182 So.2d at 39. The teaching in Blanton has been around for 40 years; it is hardly new.[6] If a Florida insurer truly intends to exclude unlicensed drivers, the policy text would have to exclude coverage for any person driving any vehicle without a valid driver’s license.
In context, the meaning of Exclusion 9 is more sensibly bound up with using a vehicle belonging to someone else while lacking a plausible reason to believe that one had consent to do so. The meaning argued by the insurer, having a valid driver’s license, could not possibly be more than a remotely possible meaning — and a very weak one at that. From the context plainly it is not the probable one. We think permission to use the auto (without necessarily driving it) is the only meaning the text and context will bear.
We hasten to add that even if having a valid driver’s license was an intended meaning of the insurer, the standard meaning of the actual terminology used by the insurer also reveals the stronger meaning of consent to use the auto in question. In short, both meanings would then be possible. The clause would be legally ambiguous because it is capable of being fairly and reasonably read both for and against coverage. Exclusion 9 would therefore have to be construed in favor of coverage. Deni Associates of Fla. Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1138 (Fla.1998) (ambiguous exclusionary provisions genuinely susceptible to more than one meaning must be construed in favor of the insured because the insurer usually drafts the policy); State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So.2d 1245,1248 (Fla.1986) (same).
Courts in other States confronting this same policy language in functionally identical circumstances have reached the same conclusion. For example in Hurst v. Grange Mutual Casualty Company, 266 Ga. 712, 470 S.E.2d 659 (1996), the court explained:
“Since the insurance contract does not contain a definition of the word ‘entitled,’ we conclude that the exclusion at issue is susceptible of three logical and reasonable interpretations: that the user must be authorized by law to drive in order to reasonably believe he is entitled to use a vehicle; that the user must have the consent of the owner or apparent owner in order to reasonably believe he is entitled to use the vehicle; or, that the user must have both consent and legal authorization in order to be entitled to use the vehicle. The number of reasonable and logical interpretations makes the clause ambiguous and the statutory rules of construction require that we construe the ambiguous clause against the insurer.” [c.o.]
470 S.E.2d at 663. Similarly, the court in Safeco Insurance Co. of America v. Davis, 44 Wash.App. 161, 721 P.2d 550 (1986), said:
“Exclusion 10 of the Safeco policy excludes from liability coverage any person using a vehicle without a reasonable belief that the person is ‘entitled’ to do so. On appeal, Safeco argues that the meaning of ‘entitled’ as used in the ex- *460 elusion is clear but nowhere states clearly its meaning. The Safeco policy itself provides no indication as to the meaning of ‘reasonable belief or ‘entitled.’ Such terms are therefore to be given their ordinary and popular meaning. However, resort to the usual extrinsic aids does not provide clear guidance. According to Webster’s ... Dictionary ... ‘entitle’ means, among other things, ‘to give a right or legal title to: qualify (one) for something: furnish with proper grounds for seeking or claiming something.’
“Several reasonable interpretations of ‘entitled’ are possible within the scope of the exclusionary language. One is ‘permission’ or ‘consent,’ which focuses on the relationship between the driver and the owner of the vehicle. Another equally plausible interpretation of ‘entitled,’ apparently that urged by Safeco, is ‘legal authority,’ which focuses on a variety of relationships that arise between the driver and the state. Safeco places special stress on the fact that Lisa Davis did not have a driver’s license. In addition, ‘entitled’ could encompass both ‘consent’ and ‘legal authority.’ The ambiguity and uncertainty of exclusion 10 are exacerbated by the broad range of situations to which the clause might apply. The average person consulting the policy would have difficulty ascertaining the extent of coverage.” [c.o., f.o.]
721 P.2d at 551-52. In State Automobile Mutual Insurance Co. v. Ellis, 700 S.W.2d 801, 802 (Ky.App.1985), the court also had identical policy text and explained:
“Reading the policy without the questioned exclusion, Andrea is clearly included in the narrow class of ‘family members’ who are specifically afforded coverage under the policy. It is possible to determine that she is covered from the face of the policy without more. When an attempt is made to apply the general exclusion to a family member such as Andrea, an ambiguity arises. It then becomes necessary to resort to facts outside the policy to determine whether there is coverage, by determining whether a reasonable belief existed that the driver was entitled to use the vehicle. The policy does not offer guidance as to what constitutes a ‘reasonable belief,’ nor does it specify whether ‘entitled’ means simply obtaining permission from the owner of the vehicle or whether a valid license from the applicable state would also be required to avoid exclusion from coverage. The rule that ordinary words in insurance policies are to be given their ordinary meaning does not resolve the ambiguity inherent in the language.”
700 S.W.2d at 802-08. There is nothing in the underlying facts or circumstances of any of these cases from other States, much less their policies’ texts, that would allow us to distinguish them in any principled or meaningful way. They all reach the same conclusions we do as to the identical insuring clause and exclusion.
To sum up, all the words used in the forms and policy are against the insurer’s attempt to deny coverage. The application form itself told the applicant to list everyone in the house upon pain of voiding coverage by misstatement. Father excluded only Mother and Daughter in the application and Named Driver Exclusion Election forms, but not Son. Son is explicitly a covered person within the policy’s own definition of that term. The accident occurred in an auto owned by someone outside the family. Exclusion 9 fails to take Son out of coverage because, reasonably and fairly read, the insurer’s asserted meaning is only a distant, possible but implausible meaning, while its plain meaning is to eliminate him from the exclusion. Son is covered for this accident.
As a last resort, the insurer relies on sworn testimony by the Father and its *461 own officials to the effect that both parties to the insurance contract intended that the policy would not cover Son because he was unlicensed. Such testimony, of course, collides with the familiar principle that clear contractual text may not be varied by parole testimony. At the same time, this argument seems to us little more than a variation on the theory of construing insurance policies according to the reasonable expectations of the parties. That theory was decisively rejected by the supreme court in Deni Associates of Florida Inc. v. State Farm Fire & Casualty Insurance Co., 711 So.2d 1135 (Fla.1998):
“There is no need [to consider the parties’ expectations] if the policy provisions are ambiguous because in Florida ambiguities are construed against the insurer. To apply the doctrine to an unambiguous provision would be to rewrite the contract and the basis upon which the premiums are charged.... Construing insurance policies upon a determination as to whether the insured’s subjective expectations are reasonable can only lead to uncertainty and unnecessary litigation.” [e.s., e.o.]
711 So.2d at 1140. Both parties say they thought the policy text meant no coverage whatever for Son, but it would be no different if only one of them had so testified. Either way, a reasonable belief contrary to the plain meaning of policy text — or even to unclear text capable of being fairly read to provide coverage — is irrelevant to construction of the policy.
The summary judgment in favor of the insurer is therefore

Reversed.

STONE and MAY, JJ„ concur.

. The father is the senior Christopher.

. We do not concern ourselves with who actually wrote the words in the blanks on the forms, Father or Agent.

. Widely known coverages are BI (bodily injury), PD (property damage), PIP (personal injury protection), and UM (uninsured motorist).

. The only exception in this definition — use of a family-owned auto — is inapplicable here.

. We cannot help but note that in the insuring clause quoted above the insurer modified the term "responsible” with the word legally.

. The fact that the operative terminology in licensure law has changed from operate to drive does not weaken the force of Blanton’s explanation.