[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-10009

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 20, 2012
JOHN LEY
CLERK

D. C. Docket No. 06-81046-CV-DMM

CHALFONTE CONDOMINIUM APARTMENT ASSOCIATION, INC.,

Plaintiff-Appellee
Cross-Appellant,

versus

QBE INSURANCE CORPORATION,

Defendant-Appellant
Cross-Appellee.

_____

No. 08-10783

_____

D.C. Docket No. 06-81046-CV-DMM

CHALFONTE CONDOMINIUM APARTMENT ASSOCIATION, INC.,

Plaintiff-Appellant,

versus

QBE INSURANCE CORPORATION,

                                        Defendant-Appellee.

_____

No. 08-11337

_____

D.C. Docket No. 06-81046-CV-DMM

CHALFONTE CONDOMINIUM APARTMENT ASSOCIATION, INC.,

                                        Plaintiff-Appellee,

versus

QBE INSURANCE CORPORATION,

                                        Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(September 20, 2012)

Before DUBINA, Chief Judge, CARNES, Circuit Judge, and RESTANI,[*] Judge.

PER CURIAM:

_____

[*]Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation.

2

In October 2005, Hurricane Wilma caused extensive damage to property owned by Chalfonte Condominium Apartment Association, Inc. ("Chalfonte"). Chalfonte filed a claim with its property insurer, QBE Insurance Corporation ("QBE"), pursuant to an insurance policy providing property coverage to Chalfonte. Chalfonte submitted an estimate of damages to QBE in December 2005 then submitted a sworn proof of loss to QBE in July 2006. After a period of time, Chalfonte became dissatisfied with QBE's investigation and processing of its claim and filed suit against QBE in federal district court. In its amended complaint, Chalfonte asserted claims for declaratory judgment, breach of contract for failure to provide coverage, and breach of contract for the breach of the implied warranty of good faith and fair dealing. The complaint also claimed that QBE had violated Section 627.701(4)(a) of the Florida Statutes. QBE moved to dismiss that claim, and the district court granted its motion, concluding that Section 627.701(4)(a) does not create a private right of action.

The remaining claims proceeded to trial. The jury reached a verdict for Chalfonte on all of its claims and in a special verdict form awarded Chalfonte $7,868,211 for QBE's failure to provide coverage and $271,888.68 for breach of the implied warranty of good faith and fair dealing. The jury also found that the insurance policy did not comply with Section 627.701(4)(a) of the Florida

3

Statutes, even though Chalfonte's claim based on that provision had been dismissed before trial.

The district court entered a final judgment in favor of Chalfonte in the amount of $8,140,099.68 and post-judgment interest. QBE filed a motion for judgment as a matter of law, a motion for new trial, and a motion to alter or amend the judgment. The district court denied all motions except the motion to alter or amend the judgment. The district court granted that motion and amended the judgment by applying the hurricane deductible contained in the policy. After the district court entered an amended judgment, QBE filed a notice of appeal.

On appeal, we certified five questions to the Supreme Court of Florida because these unanswered questions of state law affected the disposition of the case. *Chalfonte Condo. Apartment Ass'n, Inc. v. QBE Ins. Corp.*, 561 F.3d 1267, 1274–75 (11th Cir. 2009). The specific questions we certified were as follows:

> (1) Does Florida law recognize a claim for breach of the implied warranty of good faith and fair dealing by an insured against its insurer based on the insurer's failure to investigate and assess the insured's claim within a reasonable period of time?

> (2) If Florida law recognizes a claim for breach of the implied warranty of good faith and fair dealing based on an insurer's failure to

4

investigate and assess its insured's claim within a reasonable period of time, is the good faith and fair dealing claim subject to the same bifurcation requirement applicable to a bad faith claim under Fla. Stat. § 624.155?

(3) May an insured bring a claim against an insurer for failure to comply with the language and type-size requirements established by Fla. Stat. § 627.701(4)(a)?

(4) Does an insurer's failure to comply with the language and type-size requirements established by Fla. Stat. § 627.701(4)(a) render a noncompliant hurricane deductible provision in an insurance policy void and unenforceable?

(5) Does language in an insurance policy mandating payment of benefits upon "entry of a final judgment" require an insurer to pay its insured upon entry of judgment at the trial level?

*Id*. at 1274–75.

Recently, the Supreme Court of Florida answered all the questions, save number two, in the negative. *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n Inc.*, ___ So. 3d ___ (Fla. May 31, 2012). Because the state supreme court answered the first question in the negative, the court did not need to answer the

second certified question, which had been rendered moot. Specifically, the state supreme court concluded that first-party claims are actually statutory bad- faith claims that must be brought under Section 624.155 of the Florida Statutes; that an insured cannot bring a claim against an insurer for failure to comply with the language and type-size requirements; that an insurer's failure to comply with the language and type-size requirements does not render a noncompliant hurricane deductible provision in an insurance contract void and unenforceable; and that a contractual provision mandating payment of benefits upon "entry of a final judgment" does not waive an insurer's procedural right to post a bond and stay the execution of the money judgment pending any appeal. *Id.* at ___. Accordingly, based on the Florida Supreme Court's answers to our certified questions, attached hereto as an appendix, we affirm in part and reverse in part the district court's judgment. We affirm the district court's judgment of dismissal of Chalfonte's claim under Section 627.701(4)(a) of the Florida Statutes, because an insured cannot bring a claim against an insurer for failure to comply with the language and type-size requirements established under that statutory provision, and we instruct the district court on remand to disallow any evidence of the policy's failure to comply with these requirements. We reverse the district court's order denying QBE a new trial and instruct the court on remand to bifurcate the contract claim

6

from the bad faith claim and to apply the deductible to any judgment Chalfonte

may obtain on retrial.

**AFFIRMED** in part, **REVERSED** and **REMANDED** in part.

# APPENDIX

# Supreme Court of Florida

———————

No. SC09-441

———————

**QBE INSURANCE CORPORATION,**

Appellant,

vs.

**CHALFONTE CONDOMINIUM APARTMENT ASSOCIATION, INC.,**

Appellee

[May 31, 2012]

**<u>CORRECTED OPINION</u>**

QUINCE, J.

8

This case is before the Court for review of five questions of Florida law certified by the Eleventh Circuit Court of Appeals as being determinative of a cause pending in that court and for which there appears to be no controlling precedent.  We have jurisdiction. <u>See</u> art. V, § 3(b)(6), Fla. Const.  Based on the facts and analysis outlined below, we answer the first, third, fourth, and fifth questions certified by the Eleventh Circuit in the negative. In doing so, we need not reach the second certified question.

## FACTS

This action arises from an appeal to the United States Court of Appeals for the Eleventh Circuit wherein the plaintiff-appellee and cross-appellant Chalfonte Condominium Apartments Association, Inc. (Chalfonte) appealed the dismissal of claims under section 627.701(4)(a), Florida Statutes (2009), and the denial of a motion to enforce execution of the judgment, and the defendant-appellant and cross-appellee QBE Insurance Corporation (QBE) appealed the denial of motions for a new trial and for judgment as a matter of law.

The facts in this case are succinctly set forth in <u>Chalfonte Condominium Apartment Ass'n v. QBE Insurance Corp.</u>, 561 F.3d 1267, 1269-70 (11th Cir. 2009):

> On October 24, 2005, Hurricane Wilma struck Boca Raton, Florida, causing significant damage to property owned by Chalfonte.

Shortly thereafter, Chalfonte filed a claim with QBE, its property insurer, pursuant to an insurance policy (the "Policy") providing property coverage to Chalfonte for the twelve month period commencing January 1, 2005. Chalfonte submitted an estimate of damages to QBE on December 18, 2005, and then submitted a sworn proof of loss to QBE on July 12, 2006. Dissatisfied with QBE's investigation and processing of its claim, Chalfonte filed suit in the United States District Court for the Southern District of Florida.

In the district court, Chalfonte raised claims for declaratory judgment (Count I), breach of contract—failure to provide coverage (Count II), breach of contract—breach of the implied warranty of good faith and fair dealing (Count III), and violation of Fla. Stat. § 627.701(4)(a) (Count IV). The district court dismissed Count IV of the complaint, concluding that § 627.701 does not provide a private right of action, and then held a jury trial on Chalfonte's remaining claims. The jury found for Chalfonte on all of its claims, awarding Chalfonte $7,868,211 for QBE's failure to provide coverage ($2,000,000 of which was awarded for "ordinance or law" coverage) and $271,888.68 for breach of the implied warranty of good faith and fair dealing, for a total award of $8,140,099.68. The jury also concluded that the Policy did not comply with § 627.701(4)(a).

The district court entered a final judgment in favor of Chalfonte in the amount of $8,140,099.68, with post-judgment interest accruing in accordance with 28 U.S.C. § 1961. QBE then filed a motion for judgment as a matter of law, a motion for a new trial, and a motion to alter or amend the judgment. The district court denied QBE's motions for judgment as a matter of law and for a new trial, but granted QBE's motion to amend the judgment by applying the hurricane deductible contained in the Policy despite the jury's conclusion that the Policy did not comply with the requirements for hurricane deductible provisions set forth in § 627.701(4)(a).

Chalfonte also filed a motion to amend the final judgment. The district court granted Chalfonte's motion to amend the judgment to include prejudgment interest and calculated prejudgment interest for the period beginning August 1, 2006, twenty days after Chalfonte

submitted a sworn proof of loss, and ending September 6, 2007, the date that judgment was entered. On December 18, 2007, the district court entered an amended final judgment in favor of Chalfonte in the amount of $7,237,223.88, with post-judgment interest accruing in accordance with 28 U.S.C. § 1961. QBE filed a notice of appeal of the amended final judgment and posted a supersedeas bond amounting to 110% of the amended final judgment.

Id. (footnote omitted). Chalfonte moved to enforce the judgment, claiming that the policy waived QBE's right to stay execution and obligated QBE to pay Chalfonte within thirty days of the judgment. In support of this motion, Chalfonte relied on the following provision in the insurance policy:

> Provided you have complied with all the terms of the Coverage Part, we will pay for covered loss or damage: . . . (2) Within 30 days after we receive the sworn proof of loss and: (a) There is an entry of final judgment . . . .

The district court rejected Chalfonte's argument, finding that QBE had complied with the applicable procedural rules in filing its supersedeas bond and had not waived its right to a stay under the policy. On appeal, the Eleventh Circuit deemed it necessary to certify five questions to this Court, noting that "Florida courts have not definitively answered these questions." The Eleventh Circuit asks:

> 1. Does Florida law recognize a claim for breach of the implied warranty of good faith and fair dealing by an insured against its insurer based on the insurer's failure to investigate and assess the insured's claim within a reasonable period of time?
> 2. If Florida law recognizes a claim for breach of the implied warranty of good faith and fair dealing based on an insurer's failure to investigate and assess its insured's claim within a reasonable

11

period of time, is the good faith and fair dealing claim subject to the same bifurcation requirement applicable to a bad faith claim under Fla. Stat. § 624.155?

3. May an insured bring a claim against an insurer for failure to comply with the language and type-size requirements established by Fla. Stat. § 627.701(4)(a)?

4. Does an insurer's failure to comply with the language and type-size requirements established by Fla. Stat. § 627.701(4)(a) render a noncompliant hurricane deductible provision in an insurance policy void and unenforceable?

5. Does language in an insurance policy mandating payment of benefits upon "entry of a final judgment" require an insurer to pay its insured upon entry of judgment at the trial level?

Id. at 1274-75. We address each question in turn below by reviewing the history of the law and analyzing its application to the certified questions.

**ANALYSIS**

This Court has recounted the evolution of insurance contract litigation in Florida in a number of its previous cases. See, e.g., Allstate Indem. Co. v. Ruiz, 899 So. 2d 1121, 1125-1129 (Fla. 2005); Talat Enters., Inc. v. Aetna Cas. & Sur. Co., 753 So. 2d 1278, 1281 (Fla. 2000); State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So. 2d 55, 58-59 (Fla. 1995). Until the twentieth century, actions for breaches of insurance contracts were treated the same as any other breach of contract action. Laforet, 658 So. 2d at 58. However, as insurance took on a larger institutional role and liability policies began to replace traditional indemnity polices as the

12

standard policy form, insurance contracts began to be seen as distinguishable from other types of contracts. Id. Under the liability policies, insurance companies took on the obligation of defending the insured and the power to settle or refuse to settle a claim. Id. In light of this, courts began to recognize that insurers owed a duty to their insureds to refrain from acting solely in the insurers' own interests in settlement. Id. "This concern gave life to the concept that insurance companies had an obligation of good faith and fair dealing." Ruiz, 899 So. 2d at 1125; see also Laforet, 658 So. 2d at 58 ("This duty became known as the 'exercise of good faith' or the 'avoidance of bad faith.'").

For many years, Florida courts imposed an independent duty on liability insurers to act in good faith when defending insureds against third-party claims, see, e.g., Butchikas v. Travelers Indem. Co., 343 So. 2d 816, 817-18 (Fla. 1976), and recognized a common law cause of action for bad faith within the context of third-party actions. Boston Old Colony Ins. Co. v. Gutierrez, 386 So. 2d 783, 785 (Fla. 1980). In fact, Florida common law recognized third-party bad-faith actions involving insurance as early as 1938. See Auto Mut. Indem. Co. v. Shaw, 184 So. 852 (Fla. 1938). These third-party bad-faith actions involved a claim "in which an insured sues his liability insurance company for bad faith in failing to settle a claim which ultimately results in a third-party judgment against him in excess of

13

the policy limits." Time Ins. Co. v. Burger, 712 So. 2d 389, 391 (Fla. 1998). Even though the bad faith occurred between an insurer and its insured, Florida courts have also allowed the injured third party to bring a bad-faith action directly against the first party's insurer without an assignment of the cause of action by the insured  first party.  See Thompson v. Commercial Union Ins. Co. of New York, 250 So. 2d  259 (Fla. 1971).

However, at the time, no analogous bad-faith action existed for first-party claimants[1] in Florida common law.  Ruiz, 899 So. 2d at 1125; Laforet, 658 So. 2d at 59.  Florida was among a number of states upholding a distinction between the duty owed to first- and third-party claimants, with insurers owing no fiduciary duty in first-party claims because their legal relationship was that of "debtor and creditor."  Baxter v. Royal Indem. Co., 285 So. 2d 652, 657 (Fla. 1st DCA 1973).

In 1982, the Legislature enacted section 624.155 of the Florida  Statutes, the so-called "Bad Faith Statute."  See ch. 82-243, § 9, Laws of Fla.  This statute was "designed and intended to provide a civil remedy for any person damaged by an insurer's conduct."  Ruiz, 899 So. 2d at 1124.  Section 624.155(1)(b)1, Florida Statutes (2009), provides:

---

[1]  A first-party bad-faith action involves a case in which an insured sues his or her own insurance company for improper denial of benefits. Time Ins., 712 So. 2d at 391.

14

(1) Any person may bring a civil action against an insurer when such person is damaged:

. . . .

(b) By the commission of any of the following acts by the insurer:

1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests . . . .

Thus, section 624.155(1)(b)1 created a statutory first-party bad-faith cause of action and codified prior decisions authorizing a third party to bring a bad-faith action under the common law. Talat, 753 So. 2d at 1283 ("[T]he civil remedy provided in subdivision (1)(b)1 was not in existence for first-party insureds before the adoption of the civil remedy statute."); State Farm Fire & Cas. Co. v. Zebrowski, 706 So. 2d 275, 277 (Fla. 1997) (concluding that the statute "authorizes a third party to file a bad-faith claim directly against the liability insurer without an assignment by the insured upon obtaining a judgment in excess of the policy limits"); Macola v. Gov't Emps. Ins. Co., 953 So. 2d 451, 456 (Fla.) (explaining that statute also codified the Court"s prior decisions authorizing a third party to bring a bad-faith action under the common law). "Therefore, the same obligations of good faith that existed for insurers dealing with their insureds in the third-party context were extended by statute to the first-party context." Macola, 953 So. 2d at 456.

Since the statute's enactment, both federal and Florida courts have found that section 624.155 extends bad-faith actions to the first-party context.  See, e.g., Jones v. Continental Ins. Co., 920 F.2d 847, 849 (11th Cir. 1991) (citing a number of cases in which the courts have reached this conclusion); Porcelli v. OneBeacon Ins. Co., 635 F. Supp. 2d 1312, 1316 (M.D. Fla. 2008); Laforet, 658 So. 2d at 58-59; Opperman v. Nationwide Mut. Fire Ins. Co., 515 So. 2d 263, 265-66 (Fla. 5th DCA 1987); see also United Guar. Residential Ins. Co. of Iowa v. Alliance Mortg. Co., 644 F. Supp. 339, 341 (M.D. Fla.1986) ("The language of section 624.155 indicates that the overall purpose of the legislature was to impose civil liability on insurers who act inequitably vis-a-vis their insureds, not simply to restate or clarify  the common law.").

Relevant legislative history also supports the conclusion that there was no first-party bad-faith action prior to the enactment of section 624.155.  A 1982 Staff Report to the House Committee on Insurance states that section 624.155 "requires insurers to deal in good faith to settle claims.  Current case law requires this standard in liability claims, but not in insured motorist coverage; the sanction is that a company is subject to a judgment in excess of policy limits.  This section would apply to all insurance policies."  Fla. H.R. Comm. on Ins., HB 4-F(1982), Staff Analysis 12 (June 3, 1982) (on file with Florida State Archives).  "This

language indicates the Legislature recognized that prior to this statute, case law did not permit first parties, such as those covered under uninsured motorists policies, to sue their insurance companies for bad faith refusal to pay claims." Rowland v. Safeco Ins. Co. of America, 634 F. Supp. 613, 615 (M.D. Fla. 1986).

Based on this case law and legislative history, it is clear that there is no common law first-party bad-faith action in Florida. However, Chalfonte asserts that its claim for a violation of the implied contractual warranty of good faith and fair dealing is not the same as a bad-faith claim by a first party. Chalfonte cites a number of federal cases in which the courts have recognized a separate common law claim for breach of the implied warranty of good faith and fair dealing. See, e.g., Townhouses of Highland Beach Condo. Ass'n v. QBE Ins. Corp., 504 F. Supp. 2d 1307, 1311 (S.D. Fla. 2007) (explaining that this action "relates to the express contractual provision breached and does not contemplate the parties' wrongful conduct, only whether a contractual term was breached and whether the parties" reasonable contractual expectations have been thwarted"). Chalfonte also relies on the Third District Court of Appeal's decision in O'Shields v. United Automobile Insurance Co., 790 So. 2d 570 (Fla. 3d DCA 2001), which is cited by the Eleventh Circuit in the instant case as "implicitly recogniz[ing] that a good

17

faith and fair dealing claim can be distinct from a statutory bad faith claim in a first-party action on an insurance contract." Chalfonte, 561 F.3d at 1272.

In fact, other federal courts have disagreed and have determined that a breach of the implied covenant of good faith and fair dealing does not exist as a separate claim from a statutory bad-faith claim in first-party insurance claims in Florida. See Portofino South Condo. Ass'n v. QBE Ins. Corp., 664 F. Supp. 2d 1265 (S.D. Fla. 2009) (concluding that under Florida law a cause of action for breach of the implied warranty of good faith and fair dealing is subsumed in a bad-faith action pursuant to section 624.155); Nirvana Condo. Ass'n v. QBE Ins. Corp., 589 F. Supp. 2d 1336, 1342 (S.D. Fla. 2008) (dismissing a contractual claim for breach of implied warranty of good faith and fair dealing "as a matter of law" because the insured's "relief for the unreasonable or untimely payment of its claim is limited to a section 624.155 action that does not ripen until [the coverage] litigation is concluded"); QBE Ins. Corp. v. Dome Condo. Ass'n, 577 F. Supp. 2d 1256, 1261 (S.D. Fla. 2008) (dismissing a claim for breach of the implied covenant of good faith and fair dealing because "no such cause of action exists under Florida law"); cf. Trief v. Am. Gen. Life Ins. Co., 444 F. Supp. 2d 1268, 1270 (S.D. Fla. 2006) (describing plaintiff's allegations regarding insurer's failure to adjust, investigate, and pay claim as "resembl[ing] a claim for statutory bad

18

faith rather than one for breach of implied obligation of good faith" and dismissing it as premature until the underlying coverage dispute was determined). Further, as the Eleventh Circuit noted, the plaintiff in O'Shields "did not sue his insurer for failure to investigate and assess his claim within a reasonable time, but rather for failure to provide information relating to the settlement of his claim," which was an express term of the insurance contract. Chalfonte, 561 F.3d at 1272. One Florida court has at least implicitly recognized that section 624.155 constituted a change in the law regarding first-party claims based on an insurance company's bad-faith refusal to settle or pay claims. See Indus. Fire & Cas. Ins. Co. v. Romer, 432 So. 2d 66, 67 n.2 (Fla. 4th DCA 1983).

In most cases, federal courts that have dismissed breach of the implied warranty of good faith claims have concluded that no such cause of action exists in Florida. See Nirvana, 589 F. Supp. 2d at 1340-42; Dome, 577 F. Supp. 2d at 1260-61. Those federal courts that have not dismissed the implied warranty claims have relied on the general proposition that "[u]nder Florida law, the covenant of good faith and fair dealing is implied in every contract, requiring the parties to follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations." Townhouses of Highland Beach, 504 F. Supp. 2d at 1310. But see Portofino, 664 F. Supp. 2d at 1269 (concluding

19

that federal cases that found a claim for breach of implied warranty of good faith and fair dealing to be separate and distinct from a cause of action for first-party bad faith had "incorrectly applied Florida law").

Florida contract law does recognize an implied covenant of good faith and fair dealing in every contract. Burger King Corp. v. Weaver, 169 F.3d 1310, 1315 (11th Cir. 1999); Barnes v. Burger King Corp., 932 F. Supp. 1420, 1438 (S.D. Fla. 1996); County of Brevard v. Miorelli Eng'g, Inc., 703 So. 2d 1049, 1050 (Fla. 1997); Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc., 785 So. 2d 1232, 1234-35 (Fla. 4th DCA 2001). This covenant is intended to protect "the reasonable expectations of the contracting parties in light of their express agreement." Barnes, 932 F. Supp. at 1438. However, there are two limitations on such claims: (1) where application of the covenant would contravene the express terms of the agreement; and (2) where there is no accompanying action for breach of an express term of the agreement. Ins. Concepts, 785 So. 2d at 1234. A duty of good faith must "relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements." Id. (quoting Hosp. Corp. of Am. v. Fla. Med. Ctr., Inc., 710 So. 2d 573, 575 (Fla. 4th DCA 1998)).

Despite this broad language, Florida courts have not found that this implied covenant creates a separate first-party action against an insurance company based on its bad-faith refusal to pay a claim. See, e.g., Romer, 432 So. 2d at 67 ("Bad faith refusal to pay gives rise to a cause of action only if the facts involving the bad faith refusal amount to an independent tort such as fraud or intentional infliction of emotional distress.").

In fact, this Court has repeatedly described the statutory bad-faith action with reference to the duty of good faith and fair dealing. See Ruiz, 899 So.2d at 1126 (explaining that the statutory remedy in section 624.155 "essentially extended the duty of an insurer to act in good faith and deal fairly in those instances where an insured seeks first-party coverage or benefits under a policy of insurance") (emphasis added); Laforet, 658 So. 2d at 59 ("Through this statute, the Legislature created a first-party bad faith cause of action by an insured against the insured"s uninsured or underinsured motorist carrier, thus extending the duty of an insurer to act in good faith to those types of actions.") (emphasis added). Further, in discussing the legislative intent behind the enactment of section 624.155, this Court has repeatedly referred to the duty to act in good faith and to deal fairly. Ruiz, 899 So. 2d at 1127 ("The Legislature has mandated that insurance companies act in good faith and deal fairly with insureds regardless of the nature

21

of the claim presented, whether it be a first-party claim or one arising from a claim against an insured by a third party.") (emphasis added); Id. at 1128 ("The Legislature has clearly chosen to impose on insurance companies a duty to use good faith and fair dealing in processing and litigating the claims of their own insureds as insurers have had in dealing with third-party claims.") (emphasis added).  Similarly, one federal court has described "good faith" and "bad faith" as "two sides of the same coin."  Continental Cas. Co. v. City of Jacksonville, 550 F. Supp. 2d 1312, 1337  (M.D. Fla. 2007), aff'd, 283 F. App'x 686 (11th Cir. 2008). "Put differently, the absence of 'good faith' constitutes 'bad faith,' and qualitative descriptions of 'good faith' conduct are often compared to qualitative descriptions of 'bad faith' conduct composed of terms that are simply the antonyms of terms used to describe 'good  faith.'"  Id.

Federal courts have interpreted this Court's various decisions as evidence that there is no common law action for breach of the implied warranty of good faith and fair dealing in the first-party coverage context and the only remedy available is the statutory bad-faith action created by section 624.155.  Nirvana, 589 Supp. 2d at 1342 ("[A]s the Florida Supreme Court has repeatedly made clear, no theory of liability was ever available to an insured against the insurer until 1982.  That clearly includes a contractual theory of liability based on the implied

22

covenant or warranty of good faith and fair dealing."); Dome, 577 F. Supp. 2d at 1261 (stating that a claim for breach of the implied covenant of good faith and fair dealing did not exist prior to the passage of section 624.155).

Finally, the federal cases that have held that there is a separate common law first-party claim for the breach of the covenant of good faith and fair dealing based on the insurance company's failure to promptly settle a claim have not explained how this action fits into Florida insurance jurisprudence. The covenant is intended to protect "the reasonable expectations of the contracting parties in light of their express agreement." Ins. Concepts, 785 So. 2d at 1234 (quoting Barnes, 932 F. Supp. at 1438). However, this Court has specifically declined to adopt the doctrine of reasonable expectations in the context of insurance contracts, concluding that construing insurance policies under this doctrine "can only lead to uncertainty and unnecessary litigation." Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co., 711 So. 2d 1135, 1140 (Fla. 1998); see also Lenhart v. Federated Nat'l Ins. Co., 950 So.2d 454, 461 (Fla. 4th DCA 2007) (explaining that a reasonable belief contrary to the plain meaning of insurance policy, or even to unclear text capable of being fairly read to provide coverage, is irrelevant to construction of the policy); State Farm Fire & Cas. Co. v. Castillo, 829 So. 2d 242,

247 (Fla. 3d DCA 2002) (explaining that "it is the policy's terms which define [insurance] coverage, not the insured's reasonable expectations").

For the reasons discussed above, the Court answers the first certified question in the negative and concludes that such first-party claims are actually statutory bad-faith claims that must be brought under section 624.155 of the Florida Statutes. Since we have answered the first certified question in the negative, the second certified question is rendered moot.

Accordingly, we address the third and fourth certified questions, which both involve the language and type-size requirements established by section 627.701(4)(a) of the Florida Statutes.[2] Chalfonte raised a claim alleging a violation of this section by QBE. The trial court dismissed that claim, concluding that the statute does not provide a private right of action. Despite the dismissal of the claim, the jury concluded that the insurance policy did not comply with section 627.701(4)(a). Following the jury trial, the district court granted QBE's motion to amend the judgment by applying the hurricane deductible in the policy. The application of the hurricane deductible reduced the award to Chalfonte by

---

2. Section 627.701(4)(a), Florida Statutes (2009), provides in pertinent part:

 (4)(a) Any policy that contains a separate hurricane deductible must on its face include in boldfaced type no smaller than 18 points the following statement: "THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU."

24

$1,605,653. On appeal, Chalfonte argued that the district court erred in dismissing its section 627.701(4)(a) claim. Chalfonte also argued that the district court should not have applied the hurricane deductible to reduce the jury award of damages because the jury found that the policy did not comply with the requirements set forth in the statute. The Eleventh Circuit certified questions as to what remedy may be pursued by an insured that is aggrieved by noncompliance with the statute and whether noncompliance with the statutory requirements renders such a provision void and unenforceable.

The policy at issue in this case substantially complied with the statutory requirements by including the required notice on the first page of the policy in all capital letters in a larger size font than that on the rest of the page. However, the notice did not comply with the statutory requirements in two ways: the font used was 16.2-point instead of 18-point, and the statement contained the word "windstorm" instead of "hurricane."

Our determination as to whether section 627.701(4)(a) creates a private cause of action for its violation is a question of statutory interpretation. Therefore, our review is de novo. Horowitz v. Plantation Gen. Hosp. Ltd. P'ship, 959 So. 2d 176, 179 (Fla. 2007). The plain language of the statute does not provide for either a private cause of action or a penalty for a violation of its requirements. Thus, the

Court must determine whether either will be judicially implied. First, we address whether there is a private cause of action for noncompliance with the statutory requirements.

The seminal Florida case on whether a statutory cause of action exists without an express provision imposing civil liability is this Court's decision in Murthy v. N. Sinha Corp., 644 So. 2d 983 (Fla. 1994), which involved the licensing and regulatory statutes in chapter 489, Florida Statutes (1991), governing construction contracting. We had to determine whether there was a statutory cause of action against an agent who failed to supervise a corporation's construction project when the relevant statute did not expressly provide for a civil cause of action. Id. at 984-85.

In determining whether to judicially imply a cause of action, courts have historically focused on whether the statute "imposed a duty to benefit a class of individuals" and "simply concluded that a cause of action arose when a class member was injured by a breach of that duty." Id. at 985. However, as we explained in Murthy, legislative intent has become the primary factor that most courts, including the United States Supreme Court, use to determine whether to judicially infer a cause of action when a statute does not expressly provide for one. Id. (citing Transamerica Mortg. Advisors, Inc. v. Lewis, 444 U.S. 11, 15-16

(1979), and <u>Freehauf v. Sch. Bd. of Seminole County</u>, 623 So. 2d 761, 763 (Fla. 5th DCA 1993)).

In determining whether the Legislature intended to provide a private cause of action against a qualifying agent in chapter 489, we first recognized that the applicable statutes had imposed a duty on agents to supervise a corporation's construction projects. However, we explained that the recognition of a duty did not answer the question of whether a breach of that duty would give rise to civil liability. <u>Id.</u> at 985-86. To determine the existence of civil liability, we looked at the stated scope of chapter 489, which established licensing procedures and regulatory duties for the construction industry and created a licensing board to enforce the procedures and duties. <u>Id.</u> at 986. We concluded that there was "no evidence in the language of the statute or the statutory structure that a private cause of action against a qualifying agent was contemplated by the legislature in enacting this statute." <u>Id.</u> Rather, the "language of chapter 489 indicates that it was created merely to secure the safety and welfare of the public by regulating the construction industry." <u>Id.</u> We noted that "[i]n general, a statute that does not purport to establish civil liability but merely makes provision to secure the safety or welfare of the public as an entity, will not be construed as establishing a civil liability." <u>Id.</u> (quoting <u>Moyant v. Beattie</u>, 561 So. 2d 1319, 1320 (Fla. 4th DCA

27

1990) (quoting 49 Fla. Jur. 2d, Statutes § 223(1984))). We further explained that even in the prior statute the "sole provision . . . authorizing private suits" had authorized them only against unlicensed or uncertified contractors and that even that provision had been removed. Id. Without evidence of legislative intent in the "language or the legislative history" of chapter 489, we declined to recognize a private remedy against a qualifying agent. Id.

Since Murthy, we have reaffirmed the principle that whether a statutory cause of action should be judicially implied is a question of legislative intent. See Horowitz, 959 So. 2d at 182; Aramark Unif. & Career Apparel, Inc. v. Easton, 894 So. 2d 20, 23 (Fla. 2004); Villazon v. Prudential Health Care Plan, Inc., 843 So. 2d 842, 852 (Fla. 2003). Legislative intent in this context is a "shorthand reference to the ordinary tools for discerning statutory meaning: text, context, and purpose." Horowitz, 959 So. 2d at 182 (quoting Plantation Gen. Hosp. Ltd. P'ship v. Horowitz, 895 So. 2d 484, 486 (Fla. 4th DCA 2005)). The primary guide in determining whether the Legislature intended to create a private cause of action is the "actual language used in the statute." Borden v. East-European Ins. Co., 921 So. 2d 587, 595 (Fla. 2006). In determining the meaning of the language used, the court must look not only to the words themselves but also to "the context in which

28

the language lies." <u>Miele v. Prudential-Bache Sec., Inc.</u>, 656 So. 2d 470, 472 (Fla. 1995).

There is nothing in the text of section 627.701(4)(a) from which one can deduce that the Legislature intended an insured to have a private right of action against an insurer for failure to follow the notice requirements. Nor does the legislative history contain any guidance of whether the Legislature intended to create a private cause of action for the section's violation. In fact, there is hardly any mention of this section in the legislative history. It was originally codified as section 627.701(3)(c), which required the notice language in reference to "windstorms." Ch. 95-276, § 12, at 2589, Laws of Fla. The purpose of the provision was to "shift[] more wind risk to consumers, and require[] certain disclosures on the policy to that effect." Fla. S. Comm. on Banking & Ins., CS/SB 3018 (1995) Staff Analysis 10 (Apr. 17, 1995). The statute was renumbered in 1996 as subsection 4(a), and the required language was changed from "windstorm" to "hurricane." Ch. 96-194, § 12, at 609, Laws of Fla. The Senate Staff Analysis of the 1996 bill discusses the objective of "restoring the Florida homeowner insurance marketplace" and restructuring the insurance system to "ensure adequate hurricane catastrophe insurance at an affordable price." Fla. S.

Comm. on Banking & Ins., CS/SB 2314 (1996) Staff Analysis 1, 11 (Apr. 5, 1996).

Other subsections of section 627.701 also offer clues as to the context of subsection (4)(a). Section 627.701(6)(a) expresses the legislative intent "to encourage higher hurricane deductibles as a means of increasing the effective capacity of the hurricane insurance market in this state and as a means of limiting the impact of rapidly changing hurricane insurance premiums." Section 627.701(2)(a) provides that a property insurer may not issue an insurance policy containing a hurricane deductible provision unless the Department of Insurance determines that the deductible provision is clear and unambiguous. Thus, the hurricane deductible notice was a "by-product" of the Legislature's intent to increase the availability of homeowner's insurance in Florida at an affordable price through higher hurricane deductibles. The hurricane deductible notice is the means of putting the insurance purchaser on notice of the higher deductibles. The specific statutory requirements as to point size, type, and language ensure that the notice serves its purpose. When a statute "merely makes provision to secure the safety or welfare of the public," it will not be construed as establishing civil liability. Murthy, 644 So. 2d at 986 (quoting Moyant v. Beattie, 561 So. 2d 1319, 1320 (Fla. 4th DCA 1990)).

Based upon the above, we answer the third certified question in the negative and find that an insured cannot bring a claim against an insurer for failure to comply with the language and type-size requirements established by section 627.701(4)(a).

Chalfonte argues that QBE's failure to strictly comply with the notice requirements specified in section 627.701(4)(a) should render the hurricane deductible void and unenforceable. In his analysis of this issue, Judge Middlebrooks correctly noted that the Legislature did not specify any penalty or consequence for failure to comply with the requirements of section 627.701(4)(a). Chalfonte Condo. Apartment Ass'n v. QBE Ins. Corp., 526 F. Supp. 2d 1251,1256 (S.D. Fla. 2007). The Legislature included penalties in many other sections of the Insurance Code, which expressly state that a violation of the statute would render the policy provision invalid or void. See, e.g., § 627.6474, Fla. Stat. (2009) ("Any contract provision that violates this section [about health insurance provider contracts] is void."); id. § 627.415 ("Any policy provision in violation of this section [about charter, bylaw provisions] is invalid."). In other sections, the Legislature has crafted specific remedies for an insurance company's noncompliance with a statutory requirement. See, e.g., § 627.410(7)(e), Fla. Stat. § 627.410(7)(3), Fla. Stat. (2009) (providing that the Department of Insurance may

31

order an insurer to discontinue the issuance of policies when the insurer fails to meet the filing requirements and may also impose any other penalty authorized by law). In other instances, the Legislature has provided that the Department of Insurance may levy a fine as a penalty for noncompliance. See, e.g., § 624.310(5), Fla. Stat. (2009) (allowing the Department to impose a fine "against any person found in the proceeding to have violated any provision of the Insurance Code"); id. § 624.4211(1) (allowing the Department to impose a fine on an insurance company instead of suspending or revoking a certificate of authority). Most notably, in section 627.418(1), Florida Statutes (2009), the Legislature seems to suggest that in the absence of an express penalty, courts should assume that a policy provision is valid despite noncompliance with the Insurance Code. See § 627.418(1), Fla. Stat. (2009) ("Any insurance policy, rider, or endorsement otherwise valid which contains any condition or provision not in compliance with the requirements of this code shall not be thereby rendered invalid, except as provided in s. 627.415, but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy, rider, or endorsement been in full compliance with this code.").

Thus, the Insurance Code supports the conclusion that the Legislature is perfectly capable of crafting an express penalty for section 627.701(4)(a) and that

there is no good reason for the courts to select one penalty over another.

Chalfonte, 526 F. Supp. 2d at 1257; see also RTG Furniture Corp. v. Indus. Risk Insurers, 616 F. Supp. 2d 1258, 1267 (S.D. Fla. 2008) ("[I]n the absence of an express penalty attached to this statute [section 627.701(4)(a)] which prescribes the manner in which property insurers are to alert their insureds that the policy contains a separate hurricane deductible, the court is not at liberty to supply one.").

Our conclusion that courts cannot provide a remedy when the Legislature has failed to do so is also entirely consistent with the position of Florida courts in other contexts. See, e.g., Jolley v. Seamco Labs. Inc., 828 So. 2d 1050, 1051 (Fla. 1st DCA 2002) (declining to provide a remedy for a violation of Florida's Wrongful Death Act); see also Carter v. Dep't of Prof'l Regulation, 633 So. 2d 3, 6 (Fla.1994) (finding that if Legislature had intended penalty for a violation of a time limit to be dismissal of the administrative complaint, it would have expressly included that sanction within section 455.225, Florida Statutes (Supp. 1986)).

Two Florida district courts have reached opposite conclusions as to the consequences for failure of an insurance policy to strictly comply with statutory requirements which did not specify a penalty for noncompliance. Compare U.S. Fire Ins. Co. v. Roberts, 541 So. 2d 1297 (Fla. 1st DCA 1989) with Prida v.

Transamerica Ins. Fin. Corp., 651 So. 2d 763 (Fla. 3d DCA 1995).  In Roberts, the First District declared void a policy's coinsurance clause because it did not comply with the requirements of section 627.701(1).  This statute provides that a property insurer may only issue a policy containing coinsurance provisions if it meets three requirements: (1) a verification on either the face of the policy or attached to the policy that the rate charged was based on use of a coinsurance clause with the consent of the insured; (2) a clear identification of the coinsurance clause in the policy; and (3) the rate for insurance with and without the coinsurance clause is furnished to the insured upon request.  The policy at issue in Roberts did not contain the required language either on the face of the policy or in a form attached  to the policy.  Thus, the required language was entirely missing from the policy.  Roberts, 541 So. 2d at 1299.  The First District based its decision in significant part  upon the legislative history of the statute.  Id.  In its earlier version, the statute  provided that failure to comply with the statutory requirements would render the clause null and void.  When the statute was amended in 1982, this language was removed from the statute.  However, the staff analysis of the amendment provided that the new language was a "technical rewrite of current law to make it more readable," thereby indicating no legislative

34

intent to remove the consequences of noncompliance. Id. (quoting Fla. H. R. Comm. on Ins., HB 4-F (1982), Staff Analysis 91 (June 3, 1982)).

In Prida, the Third District did not void the notice of cancellation of an automobile liability insurance policy for failure to fully comply with the requirements of section 627.848(3), Florida Statutes (1993). That statute required the notice of cancellation to contain language advising the insured that certain insurance coverage is required by the financial responsibility law and that the required language be in 12-point type. Prida, 651 So. 2d at 763-64. While the notice in Prida contained the required language in contrasting red color, it was in 9.5-point type. Id. at 764. The Third District concluded that the 12-point type requirement was permissive and that the statute did not provide consequences for a violation of the requirements. Id.

We conclude that the instant case is more like Prida than Roberts in several important ways. First, QBE substantially complied with the notice requirements, as did the insurance company in Prida. Second, the hurricane deductible notice statute had never included a penalty provision as the coinsurance statute in Roberts did. Third, the coinsurance statute at issue in Roberts was not the coinsurance notice provision that was also included in section 627.701(4)(a). It was a separate statute specifying three requirements that a policy insurer must

35

follow in order to issue a policy with a coinsurance clause. Finally, Chalfonte did not assert that it received no notice of the hurricane deductible provision, which was clearly noted on the front page of the policy, but only that the font size and one of the words in the notice did not comply with the statutory requirement.

Furthermore, if this Court were to void the hurricane deductible provision and permit coverage under the remaining policy as Chalfonte wants, it would have the effect of altering the terms of the insurance contract, because the insurance contract bargained for by the parties and the lower premiums paid by Chalfonte included this hurricane deductible. "Voidance of exclusion to an insurance policy is a severe penalty which alters the very terms of the deal between the parties. It requires the insurer to provide coverage for uncontracted risk, coverage for which the insured has not paid." Fed. Deposit Ins. Corp. v. Am. Cas. Co. of Reading, Pa., 975 F.2d 677, 683 (10th Cir. 1992); see also Essex Ins. Co. v. Zota, 607 F. Supp. 2d 1340, 1351 (S.D. Fla. 2009) (refusing to void insurance policy endorsements based on surplus line commercial-general-liability insurer's failure to comply with the statute requiring the filing and approval of insurance policies and forms); cf. AIU Ins. Co. v. Block Marina Inv., Inc., 544 So. 2d 998, 999 (Fla. 1989) (stating that the Legislature did not intend "to give an insured coverage which is expressly excluded from the policy or to resurrect coverage under a

36

policy or an endorsement which is no longer in effect, simply because an insurer fails to comply with the terms of the aforementioned statute").

Based on the above analysis, we answer the fourth certified question in the negative and find that an insurer's failure to comply with the language and type size requirements established in section 627.701(4)(a) does not render a noncompliant hurricane deductible provision in an insurance policy void and unenforceable, because the Legislature has not provided for this penalty.

The last certified question asks "whether the language in an insurance policy mandating payment of benefits upon 'entry of a final judgment' requires an insurer to pay its insured upon entry of judgment at the trial level." The insurance policy provision at issue here states:

> Provided you have complied with all terms of this Coverage Part, we will pay for covered loss or damage:
> (1) Within 20 days after we receive the sworn proof of loss and reach written agreement with you; or
> (2) Within 30 days after we receive the sworn proof of loss and:
> (a) There is an entry of a final judgment; or
> (b) There is a filing of an appraisal award with us.

Chalfonte argues that the phrase "entry of a final judgment" unambiguously means the conclusion of proceedings at the trial level. Chalfonte contends that by using the phrase "entry of a final judgment," QBE waived its procedural right to stay execution of the judgment pending appeal by posting a supersedeas bond.

37

QBE responds that "final judgment" unambiguously means the conclusion of the appellate process as a matter of Florida law.  Moreover, QBE argues that the policy does not explicitly reference the right to stay execution by posting a supersedeas bond and thus the policy cannot constitute a waiver of this right.

Federal Rule of Civil Procedure 62(d) provides that an appellant may obtain a stay on appeal by posting a supersedeas bond.  The purpose of the supersedeas bond is to secure the prevailing party against the risk that the judgment debtor will be unable to meet the obligations pending appeal and to protect the prevailing party from the costs that it incurs in foregoing execution of judgment until the appeal is decided.  Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc., 600  F.2d 1189, 1190 (5th Cir. 1979).

The Florida counterpart of this federal rule provides that if an order "is a judgment solely for the payment of money, a party may obtain an automatic stay of execution pending review, without the necessity of a motion or order, by posting a good and sufficient bond."  Fla. R. App. P. 9.310(b)(1) (emphasis added).  When a stay has been entered, it "shall remain in effect during the pendency of all review  proceedings in Florida courts until a mandate issues, or unless otherwise modified  or vacated."  Fla. R. App. P. 9.310(e).  The purpose of an appellate stay is to maintain the status quo in the lower tribunal while an appeal

proceeds. If no bond is posted, the judgment creditor may execute on the judgment during the appeal. Palm Beach Heights Dev. & Sales Corp. v. Decillis, 385 So. 2d 1170, 1171 (Fla. 3d DCA 1980). If the judgment is reversed, then the appellant is entitled to have its property restored by the appellee. Ronette Commc'ns Corp. v. Lopez, 475 So. 2d 1360, 1361 (Fla. 5th DCA 1985). However, an appellant who does not post a bond runs the risk that at the time of reversal, the appellee may no longer have the money and may be judgment-proof. Id.

Under Florida law, the posting of a "good and sufficient bond" as provided in rule 9.310(b) results in an automatic stay pending appeal of an adverse money judgment. Palm Beach Heights, 385 So. 2d at 1171; Proprietors Ins. Co. v. Valsecchi, 385 So. 2d 749, 750 (Fla. 3d DCA 1980). The trial court has no discretion to change this amount or deny a stay when the bond requirements have been met.

Based on the above, we answer the fifth certified question in the negative. We conclude that a contractual provision mandating payment of benefits upon "entry of final judgment" does not waive the insurer's procedural right to post a bond pursuant to rule 9.310(b) to stay execution of a money judgment pending resolution of the appeal.

**CONCLUSION**

For the foregoing reasons, we answer the first, third, fourth, and fifth certified questions in the negative. Specifically, we conclude that under Florida law (1) first-party claims are actually statutory bad-faith claims that must be brought under section 624.155 of the Florida Statutes; (2) an insured cannot bring a claim against an insurer for failure to comply with the language and type-size requirements established by section 627.701(4)(a) of the Florida Statutes; (3) an insurer's failure to comply with the language and type-size requirements established in section 627.701(4)(a) does not render a noncompliant hurricane deductible provision in an insurance policy void and unenforceable as the Legislature has not provided for this penalty; and (4) a contractual provision mandating payment of benefits upon "entry of a final judgment" does not waive the insurer's procedural right to post a bond and stay the execution of a money judgment pending resolution of appeal.

Having answered the certified questions, we return this case to the United States Court of Appeals for the Eleventh Circuit.

It is so ordered.

PARIENTE, LABARGA, and PERRY, JJ., concur.
CANADY, C.J., and LEWIS and POLSTON, JJ., concur in result.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

Certified Question of Law from the United States Court of Appeals for the Eleventh Circuit - Case Nos. 08-10009, 08-10783, 08-11337

Raoul G. Cantero, III, of White and Case, LLP, Miami, Florida, Rodolfo Sorondo, Jr. and Monica Vila of Holland and Knight LLP, Miami, Florida, and William S. Berk of Berk Merchant and Sims, PLC, Coral Gables, Florida,

    for Appellant

Bruce S. Rogow and Cynthia E. Gunther of Bruce S. Rogow, P.A., Fort Lauderdale, Florida, Daniel S. Rosenbaum and John M. Siracusa of Rosenbaum Mollengarde, et al., West Palm Beach, Florida, Pamela Jo Bondi, Attorney General, Tallahassee, Florida, and Richard C. Valuntas, Assistant Attorney General, West Palm Beach, Florida,

    for Appellee

Anthony J. Russo of Butler, Pappas, Weihmuller, Katz, Craig, LLP, Tampa, Florida, and Caryn L. Bellus of Kubicki, Draper, P.A., Miami, Florida, on behalf of Florida Defense Lawyers Association and Federation of Defense and Corporate Counsel; William F. Merlin, Jr. and Mary Kestenbaum Fortson of Merlin Law Group, P.A., Tampa, Florida, on behalf of United Policyholders"; and Stephen A. Marino, Jr. and Danya J. Pincavage of Ver Ploeg & Lumpkin, P.A., Miami, Florida, on behalf of Florida Justice Association,

    As Amicus Curiae