[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-10009

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 9, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-81046-CV-DMM

CHALFONTE CONDOMINIUM APARTMENT ASSOCIATION, INC.,

Plaintiff-Appellee
Cross-Appellant,

versus

QBE INSURANCE CORPORATION,

Defendant-Appellant
Cross-Appellee.

_____

No. 08-10783

_____

D. C. Docket No. 06-81046-CV-DMM

CHALFONTE CONDOMINIUM APARTMENT ASSOCIATION, INC.,

Plaintiff-Appellant,

versus

QBE INSURANCE CORPORATION,

Defendant-Appellee.

_____

08-11337

_____

D. C. Docket No. 06-81046-CV-DMM

CHALFONTE CONDOMINIUM APARTMENT ASSOCIATION, INC.,

Plaintiff-Appellee,

versus

QBE INSURANCE CORPORATION,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(March 9, 2009)**

Before DUBINA and CARNES, Circuit Judges, and RESTANI,[*] Judge.

DUBINA, Circuit Judge:

**CERTIFICATION FROM THE UNITED STATES COURT OF**

**APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT**

_____

[*] Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

**OF FLORIDA, PURSUANT TO FLA. R. APP. P. 9.150(a). TO THE**

**SUPREME COURT OF FLORIDA AND ITS HONORABLE JUSTICES:**

These consolidated appeals require us to determine whether Florida law

recognizes a claim for breach of the implied warranty of good faith and fair

dealing by an insured against its insurer based on the insurer's failure to

investigate and assess the insured's claim within a reasonable period of time. In

addition, we must decide whether Florida law recognizes a private right of action

under Fla. Stat. § 627.701(4)(a) and whether an insurer's failure to comply with §

627.701(4)(a) renders a hurricane deductible void and unenforceable. We must

also decide whether, as a matter of Florida law, Defendant QBE Insurance

Corporation ("QBE") contractually waived its procedural right to stay execution of

the amended final judgment entered in favor of Plaintiff Chalfonte Condominium

Association, Inc. ("Chalfonte") by posting a supersedeas bond. Because the

Florida courts have not definitively answered these questions, we certify them to

the Supreme Court of Florida.

## I. BACKGROUND

On October 24, 2005, Hurricane Wilma struck Boca Raton, Florida, causing

significant damage to property owned by Chalfonte. Shortly thereafter, Chalfonte

filed a claim with QBE, its property insurer, pursuant to an insurance policy (the

3

"Policy") providing property coverage to Chalfonte for the twelve month period commencing January 1, 2005. Chalfonte submitted an estimate of damages to QBE on December 18, 2005, and then submitted a sworn proof of loss to QBE on July 12, 2006. Dissatisfied with QBE's investigation and processing of its claim, Chalfonte filed suit in the United States District Court for the Southern District of Florida.

In the district court, Chalfonte raised claims for declaratory judgment (Count I), breach of contract—failure to provide coverage (Count II), breach of contract—breach of the implied warranty of good faith and fair dealing (Count III), and violation of Fla. Stat. § 621.701(4)(a) (Count IV). The district court dismissed Count IV of the complaint, concluding that § 621.701 does not provide a private right of action, and then held a jury trial on Chalfonte's remaining claims. The jury found for Chalfonte on all of its claims, awarding Chalfonte $7,868,211 for QBE's failure to provide coverage ($2,000,000 of which was awarded for "ordinance or law" coverage) and $271,888.68 for breach of the implied warranty of good faith and fair dealing, for a total award of $8,140,099.68. The jury also concluded that the Policy did not comply with § 627.701(4)(a).

The district court entered a final judgment in favor of Chalfonte in the amount of $8,140,099.68, with post-judgment interest accruing in accordance with

4

28 U.S.C. § 1961.  QBE then filed a motion for judgment as a matter of law, a motion for a new trial, and a motion to alter or amend the judgment.   The district court denied QBE's motions for judgment as a matter of law and for a new trial, but granted QBE's motion to amend the judgment by applying the hurricane deductible contained in the Policy despite the jury's conclusion that the Policy did not comply with the requirements for hurricane deductible provisions set forth in § 627.701(4)(a).

Chalfonte also filed a motion to amend the final judgment.  The district court  granted Chalfonte's motion to amend the judgment to include prejudgment interest and calculated prejudgment interest for the period beginning August 1, 2006, twenty days after Chalfonte submitted a sworn proof of loss, and ending September 6, 2007, the date that judgment was entered.  On December 18, 2007, the district court entered an amended final judgment in favor of Chalfonte in the amount of $7,237,223.88,[1] with post-judgment interest accruing in accordance with 28 U.S.C. § 1961.  QBE filed a notice of appeal of the amended final judgment and posted a supersedeas bond amounting to 110% of the amended final

---

[1] The district court reduced the original award of $8,140,099.68 by $1,605,653.00, the amount of the hurricane deductible, and then added $702,777.20 in prejudgment interest.

judgment. Chalfonte subsequently filed a notice of cross-appeal of the amended final judgment.

Following the district court's entry of the amended final judgment, Chalfonte filed a motion to enforce execution of the amended final judgment. The district court denied the motion, and Chalfonte appealed. The district court subsequently granted in part and denied in part Chalfonte's motion for attorneys' fees and costs, awarding Chalfonte $678,160.60 in fees and costs, and QBE appealed. We consolidated all of these related appeals.

## II. DISCUSSION

A. *Issues Raised in QBE's Appeals*

QBE appeals the district court's denial of its motion for a new trial and its motion for judgment as a matter of law.[2] QBE asserts that Florida law does not recognize a claim for breach of the implied warranty of good faith and fair dealing based on an insurer's failure to investigate and assess its insured's claim within a reasonable period of time. Because the district court allowed Chalfonte to try such

_____

[2] QBE also contends that the district court erred in instructing the jury on the issue of "ordinance or law" coverage under the Policy and that this court should vacate the district court's award of attorneys' fees if we conclude that a new trial is warranted. Because the Supreme Court of Florida's answers to our certified questions could render either of these issues moot, we decline to resolve them at this time.

a claim, QBE contends that it is entitled to either a new trial or judgment as a matter of law.

In the alternative, QBE argues that this court should view Chalfonte's good faith and fair dealing claim as the equivalent of a statutory bad faith claim under Fla. Stat. § 624.155. Under Florida law, an insured's § 624.155 claim does not accrue until the insured prevails against its insurer on a claim for benefits under an insurance policy. *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991). QBE contends that this bifurcation requirement applies to Chalfonte's claims and that the district court erred by allowing Chalfonte to try its good faith and fair dealing claim simultaneously with its claim for benefits under the Policy. QBE asserts that this alleged error entitles QBE to either a new trial or judgment as a matter of law.

We review motions for a new trial under the abuse of discretion standard. *Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1301 (11th Cir. 2007). "Legal error is an abuse of discretion." *Woodard v. Fanboy, L.L.C.* 298 F.3d 1261, 1268 n.14 (11th Cir. 2002). "We review a district court's denial of a motion for judgment as a matter of law *de novo*, applying the same standards as the district court." *Montgomery v. Noga*, 168 F.3d 1282, 1289 (11th Cir. 1999).

The Supreme Court of Florida has repeatedly observed that Florida does not recognize a common law first-party action for bad faith failure to settle a claim under an insurance contract. *See, e.g.*, *Allstate Indem. Co. v. Ruiz*, 899 So. 2d 1121, 1125 (Fla. 2005) ("Traditionally and historically, the courts in this state did not, however, recognize a corresponding common law first-party action that would protect insured individuals and enable them to seek redress of harm against their insurers for the wrongful processing or denial of their own first-party claims or failure to deal fairly in claims processing."); *Talat Enters., Inc. v. Aetna Cas. & Sur. Co.*, 753 So. 2d 1278, 1281 (Fla. 2000) ("Although the Florida common law recognized third-party bad-faith claims, it did not recognize claims made by an insured against its own insurer for failing to act in good faith when settling a claim." (citation omitted)).

Florida law does, however, provide a statutory first-party action for bad faith failure to settle a claim under an insurance contract. The Florida Legislature enacted Fla. Stat. § 624.155 "to provide a civil remedy for any person damaged by an insurer's conduct, including '[n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests.'" *Ruiz*, 899 So. 2d at 1124 (quoting Fla. Stat. § 624.155(1)(b)(1)). QBE contends

8

that § 624.155 provides Chalfonte's exclusive remedy for QBE's alleged failure to investigate and assess Chalfonte's claim within a reasonable time.

In addition to the statutory first-party action for bad faith recognized by Florida law, "Florida contract law recognizes the implied covenant of good faith and fair dealing in every contract." *Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So. 2d 1232, 1234 (Fla. Dist. Ct. App. 2001); *accord County of Brevard v. Miorelli Eng'g, Inc.*, 703 So. 2d 1049, 1050 (Fla. 1997) ("[E]very contract includes an implied covenant that the parties will perform in good faith."). Chalfonte contends that a claim for breach of the implied warranty of good faith and fair dealing is distinct from a statutory bad faith claim, even where the good faith and fair dealing claim contains allegations of an insurer's failure to investigate and assess its insured's claim within a reasonable period of time. According to Chalfonte, if courts do not read the implied warranty of good faith and fair dealing into all insurance contracts, insurers will be able to defer perpetually settlement of the claims of their insureds under the guise of "adjusting" the claims.

Several of the federal district courts in Florida have held that common law good faith and fair dealing claims are distinct from statutory bad faith claims in the context of a first-party action on an insurance contract. *See, e.g., Townhouses of*

9

*Highland Beach Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 504 F. Supp. 2d 1307, 1312 (S.D. Fla. 2007) (stating that "a cause of action for breach of the implied warranty of good faith and fair dealing is separate and distinct from [a] cause of action for first party bad faith" and allowing plaintiff to proceed on its implied warranty claim).

In addition, at least one Florida appellate court has implicitly recognized that a good faith and fair dealing claim can be distinct from a statutory bad faith claim in a first-party action on an insurance contract. *See O'Shields v. United Auto. Ins. Co.*, 790 So. 2d 570, 571 (Fla. Dist. Ct. App. 2001) ("An insurance company owes a duty of good faith and fair dealing to its insured under the terms of the insurance policy."). The plaintiff in *O'Shields*, however, did not sue his insurer for failure to investigate and assess his claim within a reasonable time, but rather for failure to provide information relating to the settlement of his claim. *Id.* No Florida court has explicitly held that an insured may bring a claim for breach of the implied warranty of good faith and fair dealing for an insurer's failure to investigate and assess its insured's claim within a reasonable period of time.

We are not convinced that the Florida courts have definitively concluded that an insured may bring a good faith and fair dealing claim for an insurer's failure to investigate and assess its insured's claim within a reasonable period of

10

time. Nor do we believe that the Florida courts have decisively held that a statutory bad faith action provides the exclusive remedy for an insurer's failure to investigate and assess its insured's claim within a reasonable period of time. Furthermore, because the Florida courts have not squarely addressed this type of good faith and fair dealing claim, the Florida courts have not determined whether the bifurcation requirement applicable to statutory bad faith claims also applies to a claim for breach of the implied warranty of good faith and fair dealing based on an insurer's failure to investigate and assess its insured's claim within a reasonable period of time.

"Substantial doubt about a question of state law upon which a particular case turns should be resolved by certifying the question to the state supreme court." *Jones v. Dillard's, Inc.*, 331 F.3d 1259, 1268 (11th Cir. 2003). The Florida Constitution authorizes the Supreme Court of Florida to "review a question of law certified by . . . a United States Court of Appeals which is determinative of the cause and for which there is no controlling precedent of the supreme court of Florida." Fla. Const. art. V, § 3(b)(6). Because questions of Florida law are determinative of the outcome of this case, and we have not found controlling precedent of the Supreme Court of Florida on these issues, we believe that certification of these questions to the Supreme Court of Florida is appropriate.

11

B. *Issues Raised in Chalfonte's Cross-Appeal*

Chalfonte asserts that the district court made two errors involving Fla. Stat. § 627.701(4)(a).[3] Section 627.701(4)(a) provides that:

Any policy that contains a separate hurricane deductible must on its face include in boldfaced type no smaller than 18 points the following statement: "THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU." A policy containing a coinsurance provision applicable to hurricane losses must on its face include in boldfaced type no smaller than 18 points the following statement: "THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU."

Fla. Stat. § 627.701(4)(a).

In Count IV of its amended complaint, Chalfonte alleged that the Policy did not comply with the requirements for hurricane deductibles or coinsurance provisions applicable to hurricane losses set forth in § 627.701(4)(a). The district court dismissed Count IV because the court concluded that § 627.701 does not

---

[3] Chalfonte also contends that the district court erred in calculating prejudgment interest. Because the Supreme Court of Florida's answers to our certified questions could result in a new trial, we decline to address the propriety of the prejudgment interest calculation at this time.

authorize a private right of action. Chalfonte argues that the district court erred in dismissing its § 627.701(4)(a) claims.

In the amended final judgment, the district court applied the hurricane deductible contained in the Policy to reduce the damages awarded by the jury to Chalfonte on its breach of contract claims. Chalfonte contends that the district court should not have applied the Policy's hurricane deductible to reduce the jury's award of damages because the jury found that the Policy did not comply with the requirements for hurricane deductibles set forth in § 627.701(4)(a).

Chalfonte's cross-appeal requires us to determine what penalty an insurer must pay for noncompliance with § 627.701(4)(a) as well as what remedy an insured aggrieved by noncompliance with the statute may pursue. Resolution of both of these issues requires a determination of how the Florida Legislature intended courts to handle violations of § 627.701(4)(a) in the absence of an explicit statutory remedy provision. The parties have cited numerous Florida cases addressing similar issues in the context of various other statutory provisions, but the Supreme Court of Florida has not yet directly addressed the consequences of noncompliance with § 627.701(4)(a). Accordingly, we believe that certification of these issues to the Supreme Court of Florida is appropriate.

C. *Chalfonte's Appeal of the District Court's Denial of Its Motion to Enforce Execution of the Amended Final Judgment*

Chalfonte argues that the plain language of the Policy required QBE to pay Chalfonte within 30 days of the district court's entry of the amended final judgment on December 18, 2007, and thus that the district court erred when it denied Chalfonte's motion to enforce execution of the amended final judgment. The Policy states:

> Provided you have complied with all terms of this Coverage Part, we will pay for covered loss or damage:
>
> (1)    Within 20 days after we receive the sworn proof of loss and reach written agreement with you; or
>
> (2)    Within 30 days after we receive the sworn proof of loss and:
>
> (a)    There is an entry of a final judgment; or
>
> (b)    There is a filing of an appraisal award with us.

(R. 21 at 44.)

According to Chalfonte, the phrase "entry of a final judgment" unambiguously means the conclusion of proceedings at the trial level. Chalfonte contends that by using the phrase "entry of a final judgment," QBE waived its procedural right to stay execution of the judgment pending appeal by posting a

14

supersedeas bond. QBE responds that "final judgment" unambiguously means the conclusion of the appellate process as a matter of Florida law. Moreover, QBE argues that the Policy does not explicitly reference the right to stay execution by posting a supersedeas bond and thus that the Policy cannot constitute a waiver of this right.

"The interpretation of an insurance contract is a matter of law subject to *de novo* review." *Admiral Ins. Co. v. Feit Mgmt. Co.*, 321 F.3d 1326, 1328 (11th Cir. 2003). "Sitting in diversity, we apply the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result. The rulings of the highest court of the forum state control our decision." *Id.* (internal citation omitted). Thus, we apply Florida substantive law to interpret the Policy.

To resolve Chalfonte's appeal of the district court's denial of its motion to enforce execution of the amended final judgment, we must determine the meaning of the phrase "entry of a final judgment" as used in the Policy. Under Florida law, "[i]t is well settled that the actual language used in the contract is the best evidence of the intent of the parties and, thus, the plain meaning of that language controls." *Rose v. M/V "Gulf Stream Falcon"*, 186 F.3d 1345, 1350 (11th Cir. 1999) (citing *Green v. Life & Health of Am.*, 704 So. 2d 1386, 1391 (Fla. 1998); *Hurt v. Leatherby Ins. Co.*, 380 So. 2d 432, 433 (Fla. 1980); *Arnold v. First Sav. &*

*Trust Co.*, 104 Fla. 545, 141 So. 608 (1932)).  However, where a phrase in a contract is subject to more than one meaning, it is "ambiguous."  *Friedman v. Va. Metal Prods. Corp.*, 56 So. 2d 515, 517 (Fla. 1952).

The Supreme Court of Florida has defined "final judgment" different ways in different contexts.  In determining that the statute of limitations on a claim for attorney malpractice does not begin to run until "the final judgment becomes final," the Supreme Court of Florida explained that "a judgment becomes final either upon the expiration of the time for filing an appeal or postjudgment motions, or, if an appeal is taken, upon the appeal being affirmed and either the expiration of the time for filing motions for rehearing or a denial of the motions for rehearing."  *Silvestrone v. Edell*, 721 So. 2d 1173, 1175 & n.2 (Fla. 1998).  However, in determining whether a party could appeal an order awarding attorneys' fees and costs entered after a voluntary dismissal, the Supreme Court of Florida stated that "[a] final judgment is one which ends the litigation between the parties and disposes of all issues involved such that no further action by the court will be necessary."  *Caufield v. Cantele*, 837 So. 2d 371, 375 (Fla. 2002).  Because the trial court in *Caufield* had completed its judicial labor, the Supreme Court of Florida held that the order was final and appealable.  *Id.*

In our view, neither of these decisions of the Supreme Court of Florida conclusively determines, as a matter of Florida law, the meaning and effect of the phrase "entry of a final judgment" as used in the Policy. Therefore, we certify this question to the Supreme Court of Florida as well.

### III. CERTIFIED QUESTIONS

We certify the following questions to the Supreme Court of Florida:

(1) Does Florida law recognize a claim for breach of the implied warranty of good faith and fair dealing by an insured against its insurer based on the insurer's failure to investigate and assess the insured's claim within a reasonable period of time?

(2) If Florida law recognizes a claim for breach of the implied warranty of good faith and fair dealing based on an insurer's failure to investigate and assess its insured's claim within a reasonable period of time, is the good faith and fair dealing claim subject to the same bifurcation requirement applicable to a bad faith claim under Fla. Stat. § 624.155?

(3) May an insured bring a claim against an insurer for failure to comply with the language and type-size requirements established by Fla. Stat. § 627.701(4)(a)?

(4) Does an insurer's failure to comply with the language and type-size requirements established by Fla. Stat. § 627.701(4)(a) render a noncompliant hurricane deductible provision in an insurance policy void and unenforceable?

(5) Does language in an insurance policy mandating payment of benefits upon "entry of a final judgment" require an insurer to pay its insured upon entry of judgment at the trial level?

In certifying these questions, we do not intend to restrict the issues considered by the Supreme Court of Florida. *See Miller v. Scottsdale Ins. Co.*, 410 F.3d 678, 682 (11th Cir. 2005) ("Our phrasing of the certified question is merely suggestive and does not in any way restrict the scope of the inquiry by the Supreme Court of Florida."). We note that the Supreme Court of Florida retains the discretion to restate these issues and to answer these questions in the manner it chooses. *See Stevens v. Battelle Mem'l Inst.*, 488 F.3d 896, 904 (11th Cir. 2007).

QUESTIONS CERTIFIED.