[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-16065
_____

D.C. Docket No. 2:12-cv-14312-KMM

BETTY BOLLINGER,

Plaintiff-Appellant,

versus

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 19, 2013)

Before HULL and MARTIN, Circuit Judges, and HINKLE,[*] District Judge.

PER CURIAM:

_____
[*]Honorable Robert L. Hinkle, United States District Judge for the Northern District of
Florida, sitting by designation.

Plaintiff-Appellant Betty Bollinger appeals the district court's dismissal of her second amended complaint against Defendant-Appellee State Farm Mutual Automobile Insurance Company ("State Farm") with prejudice for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).  After review and oral argument, we affirm.

## I.  BACKGROUND

### A.    Factual Background

On October 21, 2008, Plaintiff Bollinger was involved in a car accident with a vehicle driven by Richard Armstrong.  Bollinger was injured in the accident and made a claim against Armstrong and his insurance carrier.  Armstrong's automobile liability insurance policy had a $25,000 bodily injury liability limit.  Armstrong's insurer tendered this policy limit to Bollinger in exchange for a release from future liability.

State Farm, the issuer of Bollinger's automobile insurance policy, authorized Bollinger to accept the offer and provide the release.

Bollinger, alleging that the $25,000 tendered by Armstrong's insurer under-compensated her for her injuries, then filed a claim against State Farm, pursuant to a provision for uninsured/underinsured motorist coverage ("UM Coverage") contained within her automobile insurance policy.  Bollinger's State Farm automobile insurance policy had a $10,000 limit for UM Coverage.

2

On November 5, 2009, Bollinger wrote a letter to State Farm in which she demanded that State Farm tender the $10,000 UM policy limit. In this letter, Bollinger's attorney estimated that the value of Bollinger's claim was "in excess of $60,000," and stated that

> if State Farm is unwilling to tender policy limits, I will have no alternative to file suit and, at the appropriate time, file a Proposal for Settlement/Demand for Judgment under Florida Rules of Civil Procedure and Florida Statutes, and at the expiration of the time limit for the proposal/demand, file a statutory Notice of Bad Faith Insurer Violation, in an attempt to get full value for [] Bollinger's claim.

State Farm initially rejected Bollinger's demand and made a $500 counteroffer, which Bollinger refused to accept.

## B.    December 2009–March 2011: State Court Proceedings

Bollinger filed a civil complaint against State Farm in Florida state court, alleging one count of breach of contract based on State Farm's failure to pay the UM policy limits. During the state court litigation, and pursuant to Florida Rule of Civil Procedure 1.442 and Florida Statute § 768.79, on April 13, 2010 Bollinger's attorney sent State Farm a Proposal for Settlement and a Demand for Judgment in the amount of $10,000. State Farm rejected Bollinger's settlement offer by letter on May 18, 2010. After State Farm rejected the settlement offer, Bollinger's attorney sent State Farm a letter on May 19, 2010 again indicating that Bollinger would "seek extra[-]contractual damages for State Farm's bad faith in this claim."

3

On July 9, 2010, State Farm changed course and sent Bollinger a letter offering to settle her breach of contract claim for $10,000—the UM policy limit.[1] Bollinger's attorney rejected State Farm's offer in a letter dated July 12, 2010, despite the fact that State Farm's offer amounted to a tender of the full UM policy limit, indicating that the time and costs expended in litigating Bollinger's claim, and the possible pursuit of extra-contractual bad faith damages, made settlement at that time "too late and totally unreasonable."

Bollinger's breach of contract claim proceeded to a jury trial. On January 13, 2011, the jury returned a $410,000 verdict in Bollinger's favor for her injuries, medical expenses, and other losses associated with the car accident. After applying set-offs for other insurance payments Bollinger received, the state court entered an order on March 22, 2011, setting Bollinger's total damages at $312,764.84—an amount in excess of the $10,000 UM policy limit.

## C.    April 2011: Bollinger's Amended State Court Complaint

Bollinger did not obtain a judgment against State Farm. Following the jury's verdict, instead, on April 8, 2011, Bollinger sought leave from the state court to file an amended complaint against State Farm. In this motion, Bollinger noted that her damages, as determined by the jury, exceeded the $10,000 UM policy

---

[1]State Farm contends that it ultimately sent Bollinger three separate checks for $10,000 each, urging Bollinger to accept the policy limit by simply cashing one of the checks, which Bollinger did not do.

4

limit, and that she could not recover an amount in excess of the policy limit from State Farm without alleging that State Farm had acted in bad faith. Bollinger therefore requested that she be permitted to amend her complaint against State Farm to add a claim of statutory bad faith and seek extra-contractual damages based on State Farm's unwillingness to settle her claim in good faith.[2]

The state court granted Bollinger's motion on June 20, 2011. In her amended complaint, Bollinger alleged a single count of statutory bad faith against State Farm, pursuant to Florida Statute § 624.155(1)(b)(1). Bollinger alleged she had substantially complied with Florida's statutory civil remedy pre-suit notice requirement, Florida Statute § 624.155(3), by notifying State Farm of (1) the alleged violation and (2) her intent to pursue a bad faith claim. Bollinger's amended complaint did not re-allege or incorporate by reference her breach of contract claim against State Farm, and she sought recovery of "extra[-]contractual damages in the amount of $312,764.84, plus interest and all costs."

---

[2]A first-party bad faith claim under Florida law is a statutory claim—"Florida does not recognize a common law first-party action for bad faith failure to settle a claim under an insurance contract." Chalfonte Condo. Apartment Ass'n v. QBE Ins. Corp., 561 F.3d 1267, 1271 (11th Cir. 2009). Under Florida Statute § 624.155(1)(b)(1), which creates the first-party bad faith cause of action, an insurer may be liable to its insured if the insurer does not attempt "in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for [the insured's] interests."

Florida Statute § 624.155 also contains a mandatory pre-suit notice requirement, which requires, inter alia "[a]s a condition precedent to bringing an action under [§ 624.155], the [Department of Financial Services] and the authorized insurer must have been given 60 days' written notice of the violation." Fla. Stat. § 624.155(3)(a). This statutory pre-suit notice must be provided "on a form provided by the [Department of Financial Services] and shall state with specificity" certain information about the alleged bad faith. Id. § 624.155(3)(b).

### D.    July 2011: Removal to Federal Court

State Farm timely removed Bollinger's amended complaint to federal court on July 19, 2011.  Bollinger moved to remand, arguing that State Farm's notice of removal was untimely filed.  The district court denied the motion, concluding that State Farm's July 19 notice of removal was timely, since the 30-day removal period did not begin until the state court granted Bollinger's motion for leave to file an amended complaint on June 20, 2011.

Shortly after removal, State Farm moved for summary judgment, arguing that Bollinger's failure to comply with Florida's statutory civil remedy notice requirement, a condition precedent to the pursuit of a bad faith claim under § 624.155, barred her from pursuing a bad faith claim against State Farm.

On January 12, 2012, the district court denied State Farm's motion for summary judgment.  Instead, finding that Bollinger's bad faith claim was "not ripe for review," the district court ordered Bollinger's amended complaint dismissed without prejudice for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1).  In finding Bollinger's bad faith claim unripe, the district court noted that a bad faith claim did not ripen until the insurer failed to "cure" the alleged bad faith during a 60-day period triggered by the filing of a statutory civil remedy notice by the insured.  Thus, "the entire basis for any [bad faith] case or controversy" was contingent on the insured filing such a notice.

6

Because Bollinger had not complied with the notice requirement, State Farm had not been afforded the required 60-day cure period. The district court therefore found dismissal without prejudice of Bollinger's amended complaint to be the appropriate remedy.[3]

### E.    April 2012: Return to State Court

Instead of appealing the federal district court's dismissal without prejudice of her amended complaint, Bollinger returned to state court. On April 16, 2012, Bollinger filed a "Motion to Continue with Plaintiff's Claim against Defendant in the Original State Court Action" in the state court from which State Farm had removed her amended complaint. In this "Motion," Bollinger requested that the state court permit "continuation of [her] Amended Complaint, in the [s]tate [c]ourt action which is still open . . . ." State Farm opposed Bollinger's "Motion," arguing that the federal district court's dismissal of Bollinger's bad faith claim demonstrated that the claim was "barred as a matter of law."

At a hearing on the "Motion," State Farm further argued that because it had removed Bollinger's amended complaint to federal court, and the federal court had not remanded the amended complaint to the state court, the state court "had its jurisdiction taken away to handle any aspect of this [case]." At the end of this

---

[3] We agree that Bollinger failed to file the statutory cure remedy notice which caused her claim to fail, but we disagree that the issue affected the subject matter jurisdiction of the district court.

7

hearing, the state court granted Bollinger's "Motion" because the federal district court did not issue a "final adjudication on the merits" of Bollinger's amended complaint, but instead had rested its dismissal on "federal court jurisdictional grounds." For these reasons, the state court permitted Bollinger to continue litigating her bad faith claim against State Farm in state court.

**F.    May 2012: Bollinger's Motion to File a Second Amended Complaint in State Court**

On July 6, 2012, Bollinger moved the state court for leave to file a second amended complaint. In the motion, Bollinger explained that she sought leave to amend her complaint to add: (1) an allegation that the "Doctrine of Waiver" applied to her bad faith claim against State Farm; and (2) a claim for attorney's fees under Florida Statutes §§ 624.155 and 627.727(10).

The state court granted Bollinger's motion on August 7, 2012, and Bollinger's second amended complaint was deemed filed on August 7, 2012. Bollinger's second amended complaint reasserted the statutory bad faith claim against State Farm that Bollinger pled in her amended complaint, but with the additional allegation that State Farm, "by its acts and/or omissions, waived the statutory notice pre-condition required under Florida Statute § 624.155." The second amended complaint also included a demand for attorney's fees under Florida Statute § 627.727(10). Bollinger did not, however, re-allege or incorporate

8

her breach of contract claim against State Farm, and she sought recovery only for extra-contractual damages.

## G.     August 2012: Removal to Federal Court of Bollinger's Second Amended Complaint & Denial of Bollinger's Motion to Remand

On August 31, 2012, State Farm removed Bollinger's second amended complaint to federal court, alleging diversity of citizenship between the parties and an amount in controversy greater than $75,000.

Bollinger moved to remand to state court, arguing that (1) her second amended complaint (and the bad faith claim alleged therein) were materially identical to her amended complaint and its bad faith claim; (2) the federal district court, in dismissing the amended complaint, had determined that it lacked subject matter jurisdiction over the amended complaint; and (3) therefore, the federal district court likewise lacked subject matter jurisdiction over the second amended complaint.  Bollinger also argued that remand was necessary because State Farm's notice of removal (filed August 31) of the second amended complaint (filed August 7) was untimely under 28 U.S.C. § 1446(b), since it was filed: (1) more than 30 days after Bollinger filed her first amended complaint on April 8, 2011 (which put State Farm on notice that federal diversity jurisdiction existed); and (2) more than 30 days after Bollinger moved, on July 6, 2012, for leave to file the second amended complaint.

9

The district court denied Bollinger's motion to remand, concluding that the second amended complaint initiated a new action in state court, rather than a continuation of the previously-removed action. The district court concluded that State Farm timely removed the new action because removal occurred within 30 days of August 7, 2012—the date on which Bollinger was granted leave to file the second amended complaint:

> State Farm[']s removal of this newly-filed action does not violate the one year limit on removal under 28 U.S.C. § 1446(b), because the action was commenced in 2012 following the dismissal of [Bollinger's] earlier suit on this exact same claim. State Farm removed this matter within 30 days of filing of a complaint that first established this action was removable. Finally, State Farm has established the requirements of diversity jurisdiction under 28 U.S.C. § 1332, as there is complete diversity of citizenship and the amount in controversy minimum requirement is clearly satisfied.

## H.    September–October 2012: State Farm's Motion to Dismiss & District Court's Dismissal with Prejudice of Bollinger's Second Amended Complaint

After removing Bollinger's second amended complaint, State Farm moved to dismiss it for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). State Farm's motion to dismiss again argued that Bollinger had failed to comply with the notice requirement, and that Bollinger cited no legal authority for her contention that State Farm could or did waive compliance with this strict statutory condition precedent to the pursuit of a bad faith claim. State Farm's motion further argued that Bollinger, by continuing to re-file a bad faith claim that

10

failed as a matter of law, was attempting to sidestep the statutory framework designed to give State Farm a 60-day window to cure any bad faith claim by tendering the UM policy limits, a tender that State Farm had tried repeatedly to make.

Bollinger responded to State Farm's motion to dismiss by arguing that she had substantially complied with the statutory civil notice requirement by providing actual notice to State Farm of her intention to file a bad faith claim.  Bollinger also contended that State Farm waived any notice requirement because during the pendency of Bollinger's breach of contract action in state court, State Farm (1) knew that Bollinger was planning to pursue a bad faith claim in the event that the jury returned a verdict in her favor (and an award of damages exceeding the $10,000 UM policy limit) on the breach of contract claim; and (2) failed to notify Bollinger or her counsel that "failure to comply with the condition precedent of written notice to [State Farm] and the Department of Insurance[] would prevent any claim for bad faith from being successful."

The district court granted State Farm's motion to dismiss Bollinger's second amended complaint with prejudice for failure to state a claim due to Bollinger's admitted noncompliance with the statutory notice requirement in Florida Statute § 624.155(3).  As to Bollinger's substantial compliance and waiver arguments, the district court held that neither of these arguments could excuse Bollinger's failure

11

to comply with a "mandatory" condition precedent, stating

> [Bollinger's] Response [to the motion to dismiss] provides no authority to contradict the legal requirements of Florida Statute § 624.155 or the cases that reaffirm that requirement. Instead, [Bollinger] argues that she substantially complied with the Civil Remedy Notice requirements by communicating by letter to State Farm that [Bollinger] intended to pursue a bad faith claim. [Bollinger] made this argument in her earlier suit on this exact same claim before this Court. This Court rejected [Bollinger's] arguments then and rejects them again now. Florida Statute § 624.155 and relevant case law are clear that [Bollinger] must file a Civil Remedy Notice in order to bring her statutory bad faith claim. Because it is undisputed that [Bollinger] failed to file the requisite Civil Remedy Notice, [Bollinger] cannot, as a matter of law, bring a statutory bad faith claim against [State Farm].

(citations omitted). Bollinger then timely appealed the district court's dismissal of her second amended complaint.

## II.  DISCUSSION

On appeal, Bollinger contends that the district court erred in denying her motion to remand and in dismissing her second amended complaint with prejudice for failure to state a claim. We address each of these contentions in turn.

### A.    Timeliness of Removal of Bollinger's Second Amended Complaint

We review the district court's denial of a motion to remand de novo. Henderson v. Washington Nat. Ins. Co., 454 F.3d 1278, 1281 (11th Cir. 2006). An action in state court may be removed to federal court when the federal courts have diversity or federal question jurisdiction. See 28 U.S.C. § 1441(a). "The notice of removal of a civil action . . . shall be filed within 30 days after the receipt by the

12

defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ." Id. § 1446(b)(1).

Bollinger bases her argument concerning the untimeliness of State Farm's August 31, 2012, removal of the second amended complaint (filed on August 7, 2012) on two separate "triggering dates": April 8, 2011 (the date on which Bollinger moved in state court for leave to file an amended complaint alleging a bad faith claim against State Farm) and July 6, 2012 (the date on which Bollinger moved in state court for leave to file a second amended complaint, after the state court granted her "Motion to Continue with Plaintiff's Claim against Defendant in the Original State Court Action"). Plainly, if the 30-day removal window began to run on either of these dates, State Farm's August 31, 2012 notice of removal was untimely filed under 28 U.S.C. § 1446(b)(1). However, as we explain below, the only relevant date in the removal timeliness analysis is August 7, 2012: the date on which the state court granted Bollinger's motion for leave to file a second amended complaint and deemed Bollinger's second amended complaint filed, which is the date on which the 30-day removal clock began to run.

### 1.   April 8 (June 20), 2011

Bollinger's amended complaint—which she moved to file in state court on April 8, 2011, and was granted leave to file on June 20, 2011—was properly

13

removed to federal court by State Farm and later dismissed without prejudice by the federal court. The federal court, upon dismissing the amended complaint, did not remand the case to state court. It is well-established that once a case is removed to federal court, the "[s]tate court shall proceed no further unless and until the case is remanded." 28 U.S.C. § 1446(d); see id. § 1447(c) ("A certified copy of the order of remand shall be mailed by the clerk to the clerk of the [s]tate court. The [s]tate court may thereupon proceed with such case."). Because no remand order was entered in federal court, Bollinger's amended complaint never returned to state court, such that state court proceedings could have reopened on it or it could have been removed again by State Farm. See Maseda v. Honda Motor Co., Ltd., 861 F.2d 1248, 1254–55 (11th Cir. 1988) ("[A]fter removal, the jurisdiction of the state court absolutely ceases and the state court has a duty not to proceed any further in the case. Any subsequent proceedings in state court on the case are void ab initio." (citation omitted)).

### 2.     July 6, 2012 Motion for Leave to File a Second Amended Complaint

Even assuming that the state court had some arguable basis for allowing the second amended complaint to be filed and even assuming it was not void ab initio, Bollinger's motion for leave to file a second amended complaint (filed in state

14

court on July 6, 2012) also did not start the 30-day removal clock.[4]  Although

Bollinger's proposed second amended complaint was attached to the motion, the

state court did not grant Bollinger's motion and deem the second amended

complaint filed until August 7, 2012.

Because State Farm's notice of removal was filed August 31, 2012—fewer

than 30 days after Bollinger's second amended complaint was deemed filed by the

state court—removal was timely under 28 U.S.C. § 1446(b)(1).  Thus, the district

court did not err in denying Bollinger's motion to remand the second amended

complaint to state court.

**B.    Dismissal with Prejudice of Bollinger's Second Amended Complaint for Failure to State a Claim**

We review <u>de novo</u> a district court's dismissal under Rule 12(b)(6),

"accepting the allegations in the complaint as true and construing them in the light

most favorable to the plaintiff."  <u>Am. Dental Ass'n v. Cigna Corp.</u>, 605 F.3d 1283,

1288 (11th Cir. 2010) (quotation marks omitted).  To avoid dismissal for failure to

state a claim under Rule 12(b)(6), a complaint must allege "enough facts to state a

---

[4] As noted above, the federal district court dismissed the first amended complaint without prejudice but did not remand it.  Without a remand from the federal court, any further action by a state court in the same case is void <u>ab initio</u>.  <u>Maseda</u>, <u>supra</u>, 861 F.2d at 1254–55.  However, given that Bollinger filed the second amended complaint and asserted its validity and given that State Farm removed the second amended complaint and sought its dismissal on the merits, we assume for purposes of this appeal, as the parties did in the district court and in their appellate briefs here, that the second amended complaint has some validity (as opposed to being void <u>ab initio</u>) and decide the case as the parties litigated it.  <u>See</u> <u>Marsh v. Butler Cnty.</u>, 268 F.3d 1014, 1024 & n.4 (11th Cir. 2001) (en banc) (stating that this Court accepts "and will decide this case" in the way that the "parties and the district judge clearly litigated [it] . . . .").

15

claim to relief that is plausible on its face" and that rises "above the speculative level." Speaker v. U.S. Dep't of Health & Human Servs., 623 F.3d 1371, 1380 (11th Cir. 2010) (quotation marks omitted).

As noted at the outset, under Florida law, an insurer may be liable to its insured if the insurer does not attempt "in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for [the insured's] interests." Fla. Stat. § 624.155(1)(b)(1). A first-party bad faith claim under Florida law is purely a creature of statute—"Florida does not recognize a common law first-party action for bad faith failure to settle a claim under an insurance contract." Chalfonte Condo. Apartment Ass'n v. QBE Ins. Corp., 561 F.3d 1267, 1271 (11th Cir. 2009); see Talat Enter., Inc. v. Aetna Cas. & Sur. Co., 753 So. 2d 1278, 1281 (Fla. 2000) (noting that prior to 1982, the year in which the Florida Legislature adopted § 624.155, "claims made by an insured against its own insurer for failing to act in good faith when settling a claim" were not cognizable under Florida law). "Because [Florida Statute § 624.155] is in derogation of the common law, it must be strictly construed." Talat, 753 So. 2d at 1283.

The Florida statute that creates the first-party bad faith cause of action also contains the following pre-suit notice requirement in § 624.155(3):

16

(a) As a condition precedent to bringing an action under [§ 624.155], the [Department of Financial Services] and the authorized insurer must have been given 60 days' written notice of the violation. . . .

(b) The notice shall be on a form provided by the department and shall state with specificity the following information, and such other information as the department may require:

> 1. The statutory provision, including the specific language of the statute, which the authorized insurer allegedly violated.

> 2. The facts and circumstances giving rise to the violation.

> 3. The name of any individual involved in the violation.

> 4. Reference to specific policy language that is relevant to the violation, if any.  If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized insurer has not provided a copy of the policy to the third party claimant pursuant to written request.

> 5. A statement that the notice is given in order to perfect the right to pursue the civil remedy authorized by this section.

. . .

(d) No action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected.

Fla. Stat. § 624.155(3)(a)–(b), (d).  As stated in the statute, "the requirements of written notice to the Department of [Financial Services] and the insurer are conditions precedent to bringing an action under subdivision (1)(a) or (b)."  Talat, 753 So. 2d at 1283.

As the Florida Supreme Court explained in Talat, "it is plain that the Legislature intended the notice to the Department [of Financial Services] to serve

17

as a basis for the Department to assist in the settling of claims and to monitor the

insurance industry.  It also is plain that the sixty-day period was a time in which

the insurer could act to 'cure' a violation of subdivision (1)(a) or (b) about which it

had been served notice."  Id.  In sum,

> Pursuant to the statute, there is no remedy until the notice is sent by
> the insured and the insurer has the opportunity to "cure" the violation.
> If the insurer pays the damages during the cure period, then there is no
> remedy. . . .  The statutory cause of action for extra-contractual
> damages simply never comes into existence until expiration of the
> sixty-day window without the payment of the damages owed under
> the contract.

Id. at 1283–84 (emphasis added).  Florida's statutory scheme governing first-party

bad faith insurance claims is crystal clear: there is no bad faith cause of action for

an insured against her insurer until (1) the insured provides written notice to the

insurer and the Florida Department of Financial Services and (2) the insurer fails to

take curative action during the 60-day cure period.

In light of this statutory scheme, Bollinger's admitted failure to comply with

the statutory pre-suit notice requirement is fatal to her pursuit of a statutory bad

faith action against State Farm.  See Fla. Stat. § 624.155(3)(a) ("As a condition

precedent to bringing an action under [§ 624.155], the [Department of Financial

Services] and the authorized insurer must have been given 60 days' written notice

of the violation."). Her arguments concerning substantial compliance—by

providing written notice to State Farm (via letter, rather than the civil remedy

18

notice form prescribed by § 624.155(3)(b))—and waiver are without merit and are unsupported by both statute and precedent.

First, these arguments ignore the requirement that § 624.155 must be "strictly construed." Talat, 753 So. 2d at 1283. Bollinger's contention that § 624.155 is a remedial statute that, like other unrelated remedial statutes, should be liberally construed to protect the public interest is clearly foreclosed by the Florida Supreme Court's Talat decision.

Second, these arguments also ignore several of the purposes behind the statutory notice requirement: (1) giving the insurer a "last opportunity" to cure the alleged bad faith, an opportunity that State Farm tried to take advantage of by tendering the $10,000 UM policy limit and (2) assisting the Florida Department of Financial Services in its oversight of the insurance industry. See id. at 1283–84. Additionally, Bollinger has not attempted to address how, even if State Farm were capable of waiving the notice requirement on its own behalf, State Farm could likewise waive the requirement on behalf of the Florida Department of Financial Services.

Even accepting the factual allegations in Bollinger's second amended complaint as true, her statutory bad faith claim against State Farm fails because Florida law does not permit an insured to pursue a claim of bad faith against her insurer unless and until a civil remedy notice is filed—an action Bollinger admits

19

not taking.  The requirement is not merely technical, as this case demonstrates; both sides agreed at oral argument that had Bollinger given the required notice, State Farm would have paid the $10,000 within the 60-day period.  In light of the failure to give the required notice, Bollinger's second amended complaint does not "state a claim to relief that is plausible on its face."  Speaker, 623 F.3d at 1380.  Accordingly, the district court did not err in dismissing Bollinger's second amended complaint for failure to state a claim under Rule 12(b)(6).[5]

### III.  CONCLUSION

In light of the foregoing, and after oral argument and our review of the record, we affirm the dismissal with prejudice of Bollinger's second amended complaint for failure to state a claim.

**AFFIRMED.**

---

[5]In her brief on appeal, Bollinger requests that we modify the district court's order to make clear that "just that part of the complaint which alleges bad faith should be . . . dismissed." This modification, she argues, would permit the district court to remand her case to state court so that she could obtain a final judgment against State Farm in the breach of contract action that was tried to a jury and resulted in a damages award of $312,764.84.  The problem with this request is that, other than the bad faith claim and a demand for attorney's fees associated with that bad faith claim, there is no other claim against State Farm alleged in Bollinger's second amended complaint. Thus, aside from the bad faith claim resolved in this appeal, there is nothing in the second amended complaint that the federal district court could remand to state court.  At oral argument, State Farm acknowledged it would still pay $10,000 plus interest.  We do not read the dismissal with prejudice as precluding a separate breach of contract action for payment of that amount in the event State Farm  fails to pay it.  Nor do we read the dismissal with prejudice as precluding a bad-faith claim if Bollinger gives the required notice and State Farm fails to pay the $10,000 within the statutory 60-day period.