SAWAYA, J.,
dissenting.
The decision in Safeco Insurance Co. v. Fridman, 117 So.3d 16 (Fla. 5th DCA 2013), review granted, No. SC13-1607, 2014 WL 1659750 (Fla. Apr. 14, 2014), which I continue to believe is wrongly decided, is distinguishable from the instant case. I, therefore, believe the majority’s reliance on it is misplaced. I also believe that the majority has lost sight of the proper standard of certiorari review to be applied in this case.
Fridman is distinguishable because in that case, there was never any attempt to amend the plaintiffs complaint to allege a cause of action for bad faith after Safeco tendered its policy limits. But in the instant case, after GEICO tendered the full amount of its policy limits (some four years into the litigation) the Respondent, Antonio Barber (who was the plaintiff in the trial proceedings), filed a motion to amend his complaint to add a count for bad faith and a count for declaratory judgment. This motion was made before the trial court heard GEICO’s motion for judgment wherein GEICO cited to Fridman and alleged that it had confessed judgment and requested entry of a judgment in favor of Barber in the amount of the tendered policy limits. In fact, both motions were heard simultaneously. The trial court denied Barber’s motion to amend the complaint to add a bad-faith count, but granted the motion to add the declaratory judgment count.
In a case strikingly similar to the instant case, the court in Safeco Insurance Co. of Illinois v. Rader, 132 So.3d 941 (Fla. 1st DCA 2014), held that when an insurer tenders the policy limits in an uninsured motorist case and the insured moves to amend the complaint to insert a count for bad faith, such an amendment is permissible because the trial court maintains juris *113 diction to do so. The court in Rader distinguished Fridman by recognizing that no such motion to amend was made by the insured in Fridman. The holding in Rad-er directly conflicts with the majority opinion in the instant case, which interprets Fridman to mean that once the insurer tenders the policy limits, the trial court loses jurisdiction to do anything other than enter judgment for that amount. The majority opinion and Fridman both conflict with well-established rules of procedure that liberally allow amendments to pleadings. See Fla. R. Civ. P. 1. 190; see also Spectrum Interiors, Inc. v. Exterior Walls, Inc., 65 So.3d 543, 546 (Fla. 5th DCA 2011) (observing the general rule is to freely grant leave to amend); Crown v. Chase Home Fin., 41 So.3d 978, 979 (Fla. 5th DCA 2010) (same).
Thus, pursuant to Rader, the trial court should have granted Barber’s motion to amend to include a count for bad faith. Instead, the trial court denied that motion and granted the motion to amend to include a count for declaratory relief. If this was error, the error can certainly be corrected on appeal. The courts have clearly and consistently held that an appellate court can only grant a petition for certiora-ri when it is established that there is “ ‘(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on postjudgment appeal.’ ” Rodriguez v. Miami-Dade Cnty., 117 So.3d 400, 406 (Fla.2013) (quoting Williams v. Oken, 62 So.3d 1129, 1132 (Fla.2011)). The court in Rodriguez held that the latter two elements, which are referred to as irreparable harm, are jurisdictional, id., and explained:
The threshold question that must be, reached first [when determining whether to grant certiorari] is whether there is a material injury that cannot be corrected on appeal, otherwise termed as irreparable harm. Only after irreparable harm has been established can an appellate court then review whether the petitioner has also shown a departure from the essential requirements of law.
Id. at 404 (citation omitted); see also Rader, 132 So.3d at 944-45. Therefore, GEI-CO’s petition for writ of certiorari should be denied because any error in granting the motion to amend can be corrected on appeal.[1]
*114 The majority holds, based on its interpretation of Fridman, that once the policy limits are tendered (Fridman refers to such a tender as a confession of judgment), the trial court lost all jurisdiction, except to enter the confessed judgment. This is simply wrong. The majority then holds that “Barber is not precluded from litigating the damages issue on his bad-faith claim.... ” But that is exactly what Barber was appropriately doing in the UM case. The holdings of the majority in the instant case and Fridman do not comport with how the Florida Supreme Court and the Legislature say bad-faith actions should be conducted. Section 627.727(10), Florida Statutes (2008), specifically provides that the damages recoverable in an action against the UM carrier “include the total amount of the claimant’s damages, including the amount in excess of the policy limits,” and that those damages are recoverable “whether caused by an insurer or by a third-party tortfeasor.” The determination of the amount in excess of the policy limits is established by the jury verdict in the original UM case, and the Florida Supreme Court has made that clear. See State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55 (Fla.1995).
In Laforet, the insured was injured in an automobile accident and carried UM coverage in the amount of $200,000 through a policy issued by State Farm. The insured filed a UM case against State Farm, which offered $40,000 to settle the claim. That offer was refused by the insured. The case proceeded to trial, resulting in a jury verdict in the insured’s favor for damages in the amount of $400,000. With the verdict in hand, the insured filed a bad-faith action against State Farm. At the time this suit was filed, section 627.727(10) had not been enacted. Therefore, the jury returned a verdict that did not include the excess amount as damages. On the same day the verdict was returned, section 627.727(10) became effective, so the insured filed a motion for additur to include the excess amount of the damages determined in the underlying UM case. That motion was granted. State Farm appealed, claiming that the statute should not be retroactively applied.
The court analyzed section 627.727(10) to determine whether it could be applied retroactively to causes of action that accrued prior to its enactment. Through that analysis, the court twice determined that the amount in excess of the policy limits is established in the original UM case. The court stated:
Section 627.727(10) provides that the damages recoverable from an uninsured motorist insurance carrier in a bad faith action brought under section 624.155 and the 1990 amendment thereto shall include the total amount of a claimant’s damages, including any amount in excess of the claimant’s policy limits awarded by a judge or jury in the underlying claim.
Laforet, 658 So.2d at 56-57 (emphasis added). The court repeated its determination that the excess amount is to be determined *115 in the underlying UM case, noting that on July 7,1992,
section 627.727(10) became law. That statute provides that the damages recoverable from an uninsured motorist carrier in a bad faith action filed under section 624.155, such as the one at issue here, are to include the total amount of the claimant’s damages, including any amount awarded in the underlying claim in excess of the claimant’s policy limits.
Id. at 57 (emphasis added). The court then explained that the issue of retroactivity was determinative because “under the retroactive application of the new statute, State Farm was liable for the entire excess judgment awarded to the Laforets in their original case against State Farm.” Id. (emphasis added). Thus, the court in La-foret made it clear that application of section 627.727(10) requires that, in a bád-faith action, the court shall award the excess amount determined in the underlying UM case.
The court in Laforet also determined that the provision in the statute “the amount in excess of the policy limit” means the excess amount determined in the original UM case. Id. at 60. Similarly, in McLeod v. Continental Insurance Co., 591 So.2d 621 (Fla.1992), superceded by statute as stated in Time Ins. Co., Inc. v. Burger, 712 So.2d 389, 392 (Fla.1998) (“That legislation [section 627.727(10) ] merely overturned the holding of McLeod by authorizing the recovery of the ‘excess judgment’ in first-party bad-faith actions against uninsured motorist insurance carriers.”), the court explained excess judgments as follows:
McLeod appealed, arguing that the trial court erred in not granting his motion for directed verdict or, in the alternative, by refusing to instruct the jury that McLeod’s damages were fixed at the $200,000 shortfall between all available insurance coverage and the amount of the verdict in the wrongful death action. This amount is commonly referred to as the “excess judgment” and is an available remedy in third-party bad faith actions.
Id. at 623 (emphasis added) (footnote omitted).
Once Barber served his Civil Remedy Notice under section 624.155(3)(a), Florida Statutes (2008), as a condition precedent to bringing a bad-faith action, GEICO had sixty days to pay the damages owed and cure the alleged violation. § 624.155(3)(d), Fla. Stat. (2008). In Talat Enterprises, Inc. v. Aetna Casualty & Surety Co., 753 So.2d 1278 (Fla.2000), the Florida Supreme Court explained, “[I]n creating this statutory remedy for bad-faith actions, the Legislature provided this sixty-day window as a last opportunity for insurers to comply with their claim-handling obligations when a good-faith decision by the insurer would indicate that contractual benefits are owed.” Id. at 1284; see also Lane v. Westfield Ins. Co., 862 So.2d 774, 779 (Fla. 5th DCA 2003) (quoting Talat and concluding that “[t]he purpose of the civil remedy notice is to give the insurer one last chance to settle a claim with its insured and avoid unnecessary bad faith litigation ...”). Barber served GEICO with two notices under the statute. The first elicited a response from GEICO that no benefits under the policy were owed. The second, which was also served pre-suit, elicited an offer from GEICO to pay the paltry sum of $700. Barber rejected that offer and filed his UM suit. Several years into the litigation, GEICO decided to pay the policy limits. This was too little too late, and that action on the part of GEICO several years past expiration of the sixty-day cure provision did not extinguish the trial court’s jurisdiction and Barber’s right to *116 proceed with his UM case and have the jury decide the full extent of his damages.
The majority states that the bad-faith action is independent of the underlying UM case. But that is because the issues in the bad-faith action are different from the issues in the underlying UM case. The issues in the UM case are whether the tortfeasor breached a duty of care that caused damages and the extent of those damages. Florida Standard Jury Instruction (Civil) 404.7 sets forth the pertinent issues in bad-faith claims against insurers as follows: “The issue you must decide on (claimant’s) claim against (defendant) is whether (defendant) acted in bad faith in failing to settle the claim [of] [against] (insured) [and, if so, whether that bad faith was a legal cause of [loss] [damage] [or] [harm] to (claimant) ].” The Note on Use for this instruction recognizes that in a bad-faith action, the damages in excess of the policy limits are assessed by the jury in the uninsured/underinsured motorist action: “For cases in which the court will determine damages, or the only damages are those already determined in the underlying action, omit the bracketed phase [sic] on causation. If the issue of damages is being submitted to the jury for determination, then the entire instruction should be given.” Fla. Stat. Jury Instr. (Civ.) 404.7 (Note on Use) (emphasis added). The issues in the bad-faith action should not include the issue of damages suffered as a result of the tortfeasor’s negligence because the evidence is different. There is too great a danger that the evidence of the insurer’s claim file and evidence of its bad faith in failing to fairly settle the claim and pay the insured the benefits owed to him or her under the policy would unduly prejudice the jury in its determination of the amount of the damages inflicted on the insured by the tortfeasor, and this is why the damage issues should not be tried in the bad-faith action.
I believe that this court in Fridman and the majority in the instant case misapply the confession of judgment doctrine. The only case cited in Fridman relating to the confession of judgment issue is Wollard v. Lloyd’s & Cos. of Lloyd’s, 439 So.2d 217, 218 (Fla.1983), wherein the court held that the agreement of an insurer to settle a claim is the functional equivalent of a judgment for purposes of awarding attorneys fees under section 627.428, Florida Statutes, which provides that the insured shall be entitled to fees “[u]pon the rendition of a judgment ... against an insurer....” In other words, the court indulged the legal fiction of a judgment based on the settlement offer in order to award fees under the statute. Since Wollard, the courts have consistently held that is the proper application of the doctrine. See, e.g., Tampa Chiropractic Ctr., Inc. v. State Farm Mut. Auto. Ins. Co., 141 So.3d 1256 (Fla. 5th DCA 2014); Lopez v. State Farm Mut. Auto., 139 So.3d 402 (Fla. 3d DCA 2014); State Farm Fla. Ins. Co. v. Lorenzo, 969 So.2d 393 (Fla. 5th DCA 2007). In Tampa Chiropractic, this court explained the doctrine as follows:
Section 627.428 provides for the award of attorney’s fees to an insured upon the rendition of a judgment against an insurer in an action between the insurer and its insured. § 627.428, Fla. Stat. “By using the legal fiction of a ‘confession of judgment,’ our supreme court extended the statute’s application” to cases in which the insurer settles or pays a disputed claim before rendition of judgment. Basik Exports & Imports, Inc. v. Preferred Nat’l Ins. Co., 911 So.2d 291, 293 (Fla. 4th DCA 2005) (citing Wollard v. Lloyd’s & Cos. of Lloyd's, 439 So.2d 217 (Fla.1983)). When the insurer has agreed to settle a disputed case, “it has, in effect, declined to defend its position in the pending suit,” and its *117 “payment of the claim is ... the functional equivalent of a confession of judgment or a verdict in favor of the insured.” Wollard) 439 So.2d at 218. For the confession of judgment doctrine to apply, the insurer must have unreasonably withheld payment under the policy, id. at 219 n. 2, or engaged in some other wrongful behavior that forced the insured to sue, Gov’t Emps. Ins. Co. v. Battaglia, 503 So.2d 358, 360 (Fla. 5th DCA 1987); see also Jerkins v. USF & G Specialty Ins. Co., 982 So.2d 15, 17 (Fla. 5th DCA 2008). This Court has described the rationale for the confession of judgment doctrine as follows:
[T]he statutory obligation for attorney’s fees cannot be avoided [by the insurer] simply by paying the policy proceeds after suit is filed but before a judgment is actually entered because to so construe [section 627.428, Florida Statutes,] would do violence to its purpose, which is to discourage litigation and encourage prompt disposition of valid insurance claims without litigation.
Gibson v. Walker, 380 So.2d 531, 533 (Fla. 5th DCA 1980); accord First Floridian Auto & Home Ins. Co. v. Myrick, 969 So.2d 1121,1124 (Fla. 2d DCA 2007) (noting that confession of judgment doctrine operates “to penalize an insurance company for wrongfully causing its insured to resort to litigation in order to resolve a conflict with its insurer when it was within the company’s power to resolve it”); Cincinnati Ins. Co. v. Palmer, 297 So.2d 96, 99 (Fla. 4th DCA 1974) (“[I]t is neither reasonable nor just that an insurer can avoid liability for statutory attorney’s fees by the simple expedient of paying the insurance proceeds to the insured or the beneficiary at some point after suit is filed but before final judgment is entered, thereby making unnecessary the entry of a judgment.”). 141 So.3d at 1259 (footnote omitted); see also Lorenzo, 969 So.2d at 397 (“The confession of judgment doctrine turns on the policy underlying section 627.428: discouraging insurers from contesting valid claims and reimbursing insureds for attorney’s fees when they must sue to receive the benefits owed to them. Pepper’s Steel & Alloys, Inc. v. United States, 850 So.2d 462, 465 (Fla.2003). This doctrine applies where the insurer has denied benefits the insured was entitled to, forcing the insured to file suit, resulting in -the insurer’s change of heart and payment before judgment.”).
Thus the confession of judgment doctrine is intended to penalize the insurer for causing its insured to resort to litigation when it should have previously paid the benefits due under the policy. And when the insurer subsequently attempts to pay the benefits, a legal fiction is indulged that transforms the tender of benefits or settlement offer into a judgment that forms the basis for an award of fees under section 627.428. Despite the purpose of the doctrine, this court in Fridman has utilized this legal fiction to penalize insureds by taking away their right to have a jury decide the full measure of their damages in the UM cáse and further penalizing them by requiring them to file a new lawsuit to litigate the same damage issues all over again. I believe this is an improper use of the confession of judgment doctrine.
I do not believe that the UM and bad-faith statutes were intended to allow insurers to treat their insureds in the manner that the insureds in Fridman and the instant case have been treated. The injured insureds in both cases spent several years litigating the damage issues in the UM cases each filed, only to have the insurers tender the policy limits and eliminate their right to continue on with the litigation so *118 the jury could determine the full extent of their damages. And the end result is to require both insureds to do it all over again in another action involving the same parties and the same damage issues they were litigating in the UM case. I believe that allowing insurers to conduct litigation in this manner defies all logic and common sense, contravenes the fundamental principles underlying the UM and bad faith statutes, and improperly ignores the last chance provisions of section 624.155(3)(a), thus rendering that statute virtually meaningless. “ ‘The UM statute is intended to protect injured people and is not intended to benefit insurance companies or motorists who cause damage to other people.’ ” Sommerville v. Allstate Ins. Co., 65 So.3d 558, 561-62 (Fla. 2d DCA 2011) (quoting Varro v. Federated Mut. Ins. Co., 854 So.2d 726, 729 (Fla. 2d DCA 2003) (citations omitted)); see also Flores v. Allstate Ins. Co., 819 So.2d 740, 745 (Fla.2002) (“ ‘The statute is designed for the protection of injured persons, not for the benefit of insurance companies or motorists who cause damage to others.’ ” (quoting Young v. Progressive Se. Ins. Co., 753 So.2d 80, 83 (Fla.2000))). The bad-faith statute is intended to protect insureds from insurers who act in bad faith in handling claims made under the pertinent insurance policy. As part of that protection, an injured insured has the right to have a jury determine the full extent of his or her damages in the UM case so the insured may pursue a bad-faith action against its insurer for failing to timely pay in good faith the policy benefits within the sixty-day window period provided under section 624.155(3)(a). These statutes are not intended to be utilized as a charade whereby insurers are allowed, through the expedient of a fictional confession of judgment made years into the litigation, to push and pull their insureds from one lawsuit to another only to require the insureds to try the same damage issues all over again.

. Even GEICO implicitly recognizes that the alleged error in granting the motion to amend may be corrected on appeal, so in order to avoid that jurisdictional hurdle, GEICO alleges it will suffer irreparable harm because the trial court order allowing the amendment deprives GEICO of its right to remove the state court action to federal court. I believe that this argument has little merit. This court has held that certiorari would not lie to protect a litigant’s right to remove a state court action to federal court. Cont'l Baking Co. v. Vincent, 634 So.2d 242, 244 (Fla. 5th DCA 1994); see also Rader, 132 So.3d at 945-46. Moreover, GEICO cannot show that it has suffered irreparable harm under the federal removal statute, which is found in 28 U.S.C. § 1446. The courts have explained that under that statute,
a defendant may only remove within thirty days of receiving the initial pleading or service of summons. In a case not originally removable, a defendant may only remove within thirty days of receiving "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which ... has become removable.” 28 U.S.C. § 1446(b)(3). However, a case removed based on diversity jurisdiction that was not initially removable may not be removed more than one year after the commencement of the action.
Barroso v. Allstate Prop. & Cas. Ins. Co., 958 F.Supp.2d 1344, 1345 (M.D.Fla.2013).
In Bollinger v. State Farm Mutual Insurance Co., 538 Fed.Appx. 857 (11th Cir.2013), the court held that the thirty-day time limit under § 1446 begins to run when the state court grants a motion for leave to amend the complaint to add a bad-faith claim. But here, the trial court denied Barber’s motion to amend to add a bad-faith action. Therefore, any *114 claim of irreparable injury is premature until a bad-faith action is filed. Although the court in Bollinger did not specifically address the “one year after commencement of the action” time limit provided in the statute, it did implicitly hold that the one-year period begins to run when the complaint is amended to include a count for bad faith. But even if "commencement of the action” is interpreted to mean the filing of the original complaint (in the instant case that date would be February 2009 when the UM case was filed), GEI-CO lost the right to remove the action in February 2010, long before Barber moved to amend his complaint and long before GEICO confessed its judgment. Therefore, any harm suffered by GEICO under the latter interpretation was of its own making, not Barber’s.